**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Norman RAMIS, Defendant-Appellant.**

**No. 275, Docket 27895.**

United States Court of Appeals
Second Circuit.

Argued March 14, 1963.

Decided April 3, 1963.

438

Arnold N. Enker, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for Southern District of New York, Robert J. Geniesse, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Otto F. Fusco, New York City, for defendant-appellant.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Defendant Ramis appeals from his conviction after a trial by a jury for selling and conspiring to sell heroin in violation of 21 U.S.C. §§ 173, 174. Appellant's primary claim is that the government failed to prove constructive possession.

Ramis' story was that he was approached by a special employee Berlotti who asked him to get some narcotics for a friend Frank (Agent Dolce) and who told him that Ramis' friend, John Hillman, had suggested that Berlotti speak

to Ramis. Ramis testified that he spoke to Padrone, his alleged co-conspirator, about securing narcotics merely in order to do Hillman a favor, and that he had never before obtained narcotics for anyone.[1]

The testimony introduced by the Government is to the contrary, namely, that Ramis was a more frequent dealer in narcotics. Negotiations for the sale took place at McGinnis' Restaurant in Manhattan. Agent Dolce testified that when he asked the defendant how much narcotics he had for sale, Ramis told him that he "wouldn't deal for less than two ounces at a time", and that the price would be $525 an ounce. When Dolce complained that the price was too high, Ramis stated that "the heroin that he had for sale was of a very high quality". After several delays, Agent Dolce and Berlotti met the defendant and Padrone, and all four drove to Beck and Tiffany Streets in the Bronx. There Padrone and Dolce entered an apartment building where Padrone handed Dolce a package containing narcotics while Ramis remained outside. Dolce sought to pay Padrone $1,050, but was told that Ramis was to get $100. Dolce, Berlotti and Ramis then drove back to the Copper Rail Restaurant and as Dolce was leaving, Ramis asked him when he "would be ready to do business again".

Appellant relies heavily on the *in banc* decision in United States v. Jones, 308 F.2d 26 (2d Cir., 1962) but that case is clearly distinguishable. As we said there, "Properly admitted evidence showing that a given defendant set the price for a batch of narcotics, had the final say as to means of transfer, or was able to assure delivery, may well be sufficient to charge the defendant with a constructive possession of the narcotics * * *." Id. at p. 31. Here Ramis set the price for the narcotics, stated that he would not deal in less than two ounces and that the heroin he had for sale was of high quality, accompanied both Agent Dolce and Padrone to the

---

1. Ramis' co-defendant Padrone pleaded guilty prior to trial.

location where delivery was to be made, and after completion of the transaction, asked Dolce when they could transact business again. See United States v. Panica, 290 F.2d 97 (2d Cir., 1961); United States v. Malfi, 264 F.2d 147 (3d Cir., 1959). Such activities were certainly sufficient to warrant the jury's conclusion that Ramis had "a working relationship or a sufficient association with those having physical custody of the drugs so as to enable him to assure their production, without difficulty, to a customer as a matter of course * * *". Ibid.; United States v. Hernandez, 290 F.2d 86 (2d Cir., 1961).

Ramis also challenges the trial judge's instructions on the law of entrapment. The instructions given were in complete accord with the law as set forth by the Supreme Court in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Other claims of error are also without merit.

Affirmed.