**UNITED STATES of America**

**v.**

**Clifton W. HOLLAND, Appellant.**

**No. 24083.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 27, 1971.

Decided May 10, 1971.

---

Tamm, Circuit Judge, concurred and filed opinion.

Mr. Noel Hemmendinger, Washington, D. C. (appointed by this Court) for appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and John F. Evans, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, TAMM, Circuit Judge, and GIGNOUX,* United States District Judge for the District of Maine.

BAZELON, Chief Judge:

Appellant was convicted of violating 26 U.S.C. § 4704(a) (purchase, sale, or receipt of narcotic drugs not in the original stamped package and without the appropriate tax-paid stamps) and 21 U. S.C. § 174 (facilitation of concealment and sale of narcotic drugs, knowing the same to have been imported illegally). He was sentenced to two to eight years on the first charge and to five years on the second, the terms to be served concurrently.

The Government presented only two witnesses before it rested. The first was Detective Winston Norman, one of the police officers who made the arrest; the other was the expert witness who identified the narcotic drug as heroin. Detective Norman testified that he and two other police officers went to the apartment of the woman who was indicted jointly with appellant in this case, in order to execute a search warrant. The time was 6:00 in the morning. When they entered, they found the woman and appellant in the bedroom, both undressed. Appellant was hiding behind the bed. On the top of a dresser the narcotics were discovered. When he was asked to get dressed, appellant removed a shirt and a suit from a closet in the bedroom, and underwear and socks from a drawer in the dresser. Several pairs

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

of men's underwear and socks remained in the drawer, and other items of men's apparel remained in the closet.

The Government claims that its evidence proves constructive possession, and that it must therefore be permitted to go to the jury, since the statutes allow the jury to infer commission of the offenses from unexplained possession. To us, however, the Government's evidence seems entirely inadequate to defeat appellant's motion for judgment of acquittal. We must remember that constructive possession means being in a position to exercise dominion or control over a thing.[1] Such a position should not be lightly imputed to one found in another's apartment or home. If an inference of constructive possession must be made, the jury must have before it information about the regularity with which the person in question occupied the place and about his special relationship with the owner or renter.

The necessary background information is strikingly absent in this case. The Government claims that the presence of men's clothes in the apartment contributes to the conclusion that appellant's presence was "neither fortuitous nor brief, but residential," but it did not offer proof that the clothes in question belonged to or even fit appellant. For all the Government has shown, appellant may be guilty of no more than an illicit relationship. The woman, charged with the same offenses as appellant, pleaded guilty to a lesser included offense, and the evidence is entirely consistent with the hypothesis that she procured heroin for her own use. Appellant may have known about the heroin, she may even have used it in his presence, but more is required before appellant can be said to possess the heroin himself.

It is perfectly true that this appellant may be guilty. The trouble with absence of evidence is that it is consistent with *any* hypothesis. It is no answer to say, as the Government does, that this is a "close case," and therefore "one for the triers of fact." The defense was entitled to rest at the close of the Government's case, and for the jury to have convicted appellant on the evidence presented at that point would have been utter speculation.[2] The Government's case—taken and believed in whole or in part—did not show guilt beyond a reasonable doubt.

Reversed.

TAMM, Circuit Judge (concurring):

Judicial decisions have at best established ill-defined guidelines as to the evidentiary requirements necessary to prove constructive possession. Especially in reported cases growing out of narcotics prosecutions the opinions are usually built upon involved and obscure reasoning which certainly suggests judicial subjectivity. The resulting confusion should convince those who read the cases that decisions in this area are made by a selective rather than a comprehensive application. *See* Annot., 91 A.L.R.2d 810 (1963). The rhetorical legerdemain compounded in this area of the law invokes abstractions which appear more designed to achieve a particular result in an individual case than to stabilize and formalize a workable index of objective standards. The more cases one reads on constructive possession the deeper is he plunged into a thicket of subjectivity. Successive cases enumerate a continuing re-interpretation which can only be described as judicial whimsy. To basic questions to which the an-

---

1. *E. g.*, Miller v. United States, 121 U.S. App.D.C. 13, 15, 347 F.2d 797, 799 (1965) ; see Bar Ass'n of the District of Columbia, Criminal Jury Instructions for the District of Columbia, No. 93 (1966).

2. United States v. Bethea, 143 U.S.App. D.C. 68, 442 F.2d 790 (March 22, 1971), is a case very similar to this one. Appellant was a passenger in a car in which narcotics were discovered. He was convicted of the same offenses as appellant in this case. This court reversed, finding that the Government had failed to introduce sufficient evidence to prove constructive possession.

swer should be "Always", judicial hair-splitting settles for a wavering "Sometimes".

Confronted with a library of flexible abstractions, government and defense counsel alike must struggle, too often unsuccessfully, with a logically insoluble dilemma. The sum total of recorded cases can best be described as symbiotic.[1] Both prosecutor and defendant's attorney present their cases with the unfortunate knowledge that the law of constructive possession is what we will say it is in our next opinion. It is illogical to believe that from the chaotic patchwork which flows *ex cathedra* there is created a stable and definable body of law. It is the confusion and doubt unavoidable in the thinking of lawyers, created by our own meandering rulings, that results in the unfortunate waste of trial and appellate time which we have imposed upon ourselves.

The majority opinion accurately points out the affirmative conclusions which were not negated by the Government's proof and which require reversal of the present case. In so doing we make, to us, an acceptable disposition of the present case. Lawyers in future cases, concerned as to the issue of constructive possession, will still find most trial and appellate courts simultaneously looking in both directions.

I. The usual approach to determination of the existence or presence of constructive possession is largely a matter of tone. To attempt to catalogue conflicting opinions would be tedious and perplexing. The lack of exactitude is illustrated by reference to the following cases :

    United States v. Vasquez, 429 F.2d 615 (2d Cir. 1970) ; United States v. Febre, 425 F.2d 107 (2d Cir. 1970) ; United States v. Lopez, 355 F.2d 250 (2d Cir. 1966) ; United States v. Carter, 320 F.2d 1 (2d Cir. 1963) ; Hallman v. United States, 115 U.S.App.D.C. 350, 320 F.2d 669 (1963) ; United States v. Douglas, 319 F.2d 526 (2d Cir. 1963) ; United States v. Ramis, 315 F.2d 437 (2d Cir. 1963) ; United States v. Jones, 308 F.2d 26 (2d Cir. 1962)

(*en banc*) ; Collis v. United States, 101 U.S.App.D.C. 160, 247 F.2d 566 (1957) ; People v. Pippin, 16 App.Div.2d 635, 227 N.Y.S.2d 164 (1962) ; People v. Jackson, 23 Ill.2d 360, 178 N.E.2d 320 (1961) ; Crisman v. Commonwealth, 197 Va. 17, 87 S.E.2d 796 (1955).

In approximately half of the cited cases constructive possession was found to exist. In the other half the court's finding was in the negative. It is not difficult to visualize a different court holding exactly the opposite in most of these cases. The affirmative and negative rulings are in such obvious conflict that for the practitioner the problems are difficult to understand and apparently for the courts impossible to master.