UNITED STATES of America

v.

**Roberto HERNANDEZ, Appellant.**

UNITED STATES of America

v.

**Jose LOPEZ–LEYVA, Appellant.**

**Nos. 84–5800, 84–5801 and 85–5298.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 15, 1985.

Decided Jan. 10, 1986.

---

J. Herbie DiFonzo, Washington, D.C. (appointed by this court) for appellant in No. 84–5800.

Adam Ambrose, Silver Spring, Md. (appointed by this court) for appellant in Nos. 84–5801 and 85–5298.

Ilene G. Rosenthal, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell and Theodore A. Shmanda, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WRIGHT, EDWARDS, and DAVIS,* Circuit Judges.

Opinion for the court filed by Circuit Judge WRIGHT.

Opinion concurring in part and dissenting in part filed by Circuit Judge DAVIS.

J. SKELLY WRIGHT, Circuit Judge:

We review the criminal convictions of Roberto Hernandez and Jose Lopez-Leyva on charges of possession of an unregistered firearm and silencer, *see* 26 U.S.C. § 5861(d) (1982), and possession of a firearm not identified by a serial number, *see*

26 U.S.C. § 5861(i) (1982). In the course of the trial the District Court admitted evidence of an altercation that preceded the arrest of both appellants. This evidence was introduced for the purpose of showing that appellants had a motive for possessing a machine gun and silencer at the time of the arrest. Although only Hernandez was clearly involved in the fight, the evidence was admitted against both appellants. Finding that admission of this evidence against appellant Lopez-Leyva violated Federal Rules of Evidence 404(b) and 403, we vacate his conviction and remand for a new trial. As to appellant Hernandez, however, we affirm in all respects.

## I. BACKGROUND

Around midnight on June 4, 1984 Officer David Myers of the District of Columbia Metropolitan Police, patrolling in an unmarked cruiser, observed three men in a small Toyota travelling without any head or tail lights. Myers followed the car for several blocks until they came upon a marked police car. At that point the car made a sharp right turn. Myers activated his emergency light and siren and gave chase for three blocks until successfully bringing the car to a stop. During the chase Myers observed the front seat passenger, later identified as appellant Lopez-Leyva, bend over and make a motion in front of his seat.

After asking Lopez-Leyva, the back seat passenger (appellant Hernandez), and the driver (Rolando Funes),[1] to step out of the car, Myers searched the area where he had seen Lopez-Leyva bend down. On the floorboard he found a cocked and loaded automatic machine gun with a silencer attached. The gun was partially concealed by a Shell service station shirt bearing the name "Rolando." Funes, the registered

---

\* Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a) (1982).

1. Although Funes was also charged with violating 26 U.S.C. § 5861(d), (i) (1982) for possession

of an unregistered firearm and silencer, he failed to appear for trial. He was subsequently apprehended, tried, and acquitted of the possession charges but convicted of violating the Bail Reform Act, 18 U.S.C.A. § 3141 *et seq.* (1985).

owner of the car, was wearing an identical Shell shirt.

At trial the prosecution offered two witnesses who testified that around 5:00 P.M. on the day of the arrest appellant Hernandez and Mr. Funes had engaged in a fight with Alan Price who worked at the same "Barney Circle Shell" gas station as did appellant Lopez-Leyva. Price testified that Lopez-Leyva was present during the fight and that he had shouted "something" in Spanish. Trial Transcript (Tr.) 223–224. The fight stemmed from accusations by Hernandez that Price had stolen his car floor mats during the time his car was under repair at the gas station. Tr. 210–211, 400–402.

Around 10:00 P.M. Price visited another gas station owned by his employer—the "Southeast Shell" station—and was informed by one "Donny" that Funes, Hernandez, and Lopez-Leyva were looking for him. Tr. 219. Appellants denied that they were looking for Price, claiming that Funes was merely giving them a ride home and had only stopped at Southeast Shell to get some gas.[2] Shortly thereafter appellants were arrested a few blocks from Southeast Shell. According to Price's testimony, however, the scene of the arrest was also approximately a block from his residence. Tr. 222.

At the point at which the evidence of the fight was introduced, Tr. 230–231, and at the close of trial, Tr. 522–523, the District Court instructed the jury that they could not use the evidence of the fight as a basis for finding that appellants had a propensity to engage in fights; the evidence was admitted for the limited purpose of showing "intent" or "motive" to possess the firearm in question. The evidence was admitted against *both* appellants.

The jury returned a verdict of guilty on all counts. Appellants sought a new trial on the basis of newly discovered evidence regarding the location of Mr. Price's residence. Their motion was denied, as was

appellant Hernandez's motion for reconsideration of that ruling. This appeal ensued.

## II. THE LAW OF CONSTRUCTIVE POSSESSION

To prove a charge of constructive possession the government must offer evidence that the defendant "was in a position or had the right to exercise dominion or control over the firearm." *United States v. Lewis,* 701 F.2d 972, 973 (D.C.Cir.1983). We have also insisted that such "dominion and control" be "knowing." *See United States v. Whitfield,* 629 F.2d 136, 143 (D.C. Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). Although the imprecision of these general verbal formulae has long been noted, *see United States v. Holland,* 445 F.2d 701, 703–04 (D.C.Cir.1971) (Tamm, J., concurring), certain basic guidelines can be gleaned from our cases.

First, mere proximity to contraband is not enough to carry a case of constructive possession to the jury. *United States v. Pardo,* 636 F.2d 535, 549 (D.C.Cir.1980); *United States v. Whitfield, supra,* 629 F.2d at 143; *United States v. Holland, supra,* 445 F.2d at 702–03; *United States v. Bethea,* 442 F.2d 790, 793 (D.C.Cir.1971). Second, mere knowledge of the presence of contraband does not constitute constructive possession. *See United States v. Pardo, supra,* 636 F.2d at 549. Nor is mere friendship probative of constructive possession. *See United States v. Whitfield, supra,* 629 F.2d at 143 (mere friendship between driver and passenger in a car, combined with proximity to narcotics, did not create an inference of constructive possession of the narcotics). *See also United States v. Holland, supra,* 445 F.2d at 703 (fact that defendant was found in close proximity to the contraband in question and in an apartment belonging to someone with whom the defendant was having a

2. *See* Tr. 335 (testimony of appellant Lopez-Leyva); Tr. 409 (testimony of appellant Hernandez).

love affair did not create an inference of constructive possession).[3]

On the other hand, if proximity is coupled with a gesture toward the contraband, suggesting an ability to control the item in question, constructive possession might be inferred. *See United States v. Whitfield, supra,* 629 F.2d at 143. An occupant of a car therefore need merely signify control of a particular space in the car to give rise to an inference of constructive possession of contraband later found in that space. *See United States v. Bethea, supra,* 442 F.2d at 793 (suggesting that a jury could find constructive possession of drugs where an individual had been seen placing a gun in the same place where the drugs were ultimately found). Finally, evidence of motive or purpose in using the item in question can be probative of constructive possession. *See United States v. Bethea, supra,* 442 F.2d at 793 (*citing Garza v. United States,* 385 F.2d 899 (5th Cir.1967), for the proposition that where defendants have an ongoing purpose for the contraband, *e.g.,* the sale of drugs in a drug possession case, such purpose can be probative of possession). Relatedly, the fact that a defendant took evasive action in response to the presence of police can be considered in inferring constructive possession. *See United States v. Reese,* 561 F.2d 894, 898 (D.C.Cir.1977). With these principles in mind, we turn to appellants' challenges to the legality of their convictions.

**3.** *United States v. Bethea,* 442 F.2d 790, 793 (D.C.Cir.1971), did contain dicta suggesting that this court viewed friendship as probative of constructive possession. In so doing this court relied on *Eason v. United States,* 281 F.2d 818 (9th Cir.1960). In *United States v. Whitfield,* 629 F.2d 136, 143 n. 11 (D.C.Cir.1980), cert. denied, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981), however, this court read *Eason* as relying not on friendship as much as the length of the car trip and the suspicious manner in which the defendants had acted at the time the customs agents conducted the search. The *Whitfield* court then concluded that even when friendship was combined with proximity to the weapon there was no permissible inference of constructive possession. *Id.* at 143. Thus we do not consider the fact that Lopez-Leyva and Funes were co-workers or that Hernandez and Lopez-Leyva were good friends, Tr. 413, to be legally relevant to constructive possession.

## III. APPELLANTS' CLAIMS

### A. *Prejudice and the Evidence of the Fight*

Appellants claim that the trial court erred by admitting evidence of the fight with Price on the afternoon before the arrest because such evidence was unduly prejudicial to their cases. In this context we also consider Lopez-Leyva's claim that this evidence was so prejudicial that his trial should have been severed from that of Hernandez. Although we do not believe the trial court abused its discretion in denying the motion for severance, we do believe it was error to admit the evidence of the fight against appellant Lopez-Leyva. We believe this error warrants a new trial for Lopez-Leyva.

■ 1. *Admissibility.* Under Federal Rule of Evidence 404(b), evidence of a "prior bad act" is admissible to show motive or intent but not to show the propensity of an individual to commit the act of which he is accused. As to Hernandez, evidence of the fight clearly qualified under the "motive" exception of Rule 404(b). He had been involved in a fight a mere five or six hours previously. Tr. 217, 276–277. Price's account of Donny's statement, indicating that appellants were out looking for Price, also indicated that evidence of the fight was probative of motive.[4] This statement was

**4.** Appellants argue that such evidence should not be considered because it constituted hearsay. Appellants, however, failed to object to the introduction of such hearsay at trial. Indeed counsel for Hernandez expressly waived all objections on the hearsay character of Price's testimony concerning Donny's statement. He requested that the record reflect that this decision was made consciously and with the full approval of Hernandez. Tr. 456. Donny's hearsay statement was therefore properly admitted and given its full probative value. *United States v. Sampol,* 636 F.2d 621, 683 (D.C.Cir.1980); *United States v. Harris,* 437 F.2d 686, 691 (D.C.Cir. 1970).

Appellants now argue that trial counsel did object to all of the testimony concerning the prior fight. *See* brief of appellant Lopez-Leyva

circumstantially corroborated by the fact that the arrest took place within a short distance of an apartment where Price was thought to reside.

■ Appellant Lopez-Leyva, however, presents a different case. The record does not suggest that he was involved in the fight. He was merely present and, according to Price, was shouting "something" in a foreign language (*i.e.*, Spanish).[5] At no time was it determined just what Lopez-Leyva was shouting.[6] On the basis of such "shouting" the District Court determined that Lopez-Leyva was a participant in the fight and therefore that evidence of the fight was probative of *his* motive as well. Tr. 227. We cannot agree. There was simply no basis for determining whether the shouting at issue constituted encouragement or protest. It was simply indecipherable. Given that the government has the burden of proving the relevance of such "prior bad act" testimony, *see United States v. Foskey*, 636 F.2d 517, 523 (D.C. Cir.1980), it was error to make the defendant bear the burden of uncertainty as to the meaning of his "shouting." The admission of the prior bad act testimony therefore violated Rule 404(b).[7]

■ If we were to find that Lopez-Leyva's "shouting" did constitute participation in the fight, it would be involvement of the most attenuated type. Such attenuated involvement could not support the introduction of evidence of the fight as against Lopez-Leyva. For even if the government had shown that the fight was relevant to Lopez-Leyva's motive, the court must still determine whether the probative value of that evidence outweighed its prejudicial effect under Federal Rule of Evidence 403. In the case of Lopez-Leyva it is plain that whatever the slim probative value of his prior "shouting," it was overwhelmed by its prejudicial effect. Admission of such evidence would naturally lead a jury to assume that Lopez-Leyva had the motive of his associates: a slightly refined version of guilt by association. Although we are mindful that a trial court's admission of evidence under Rule 403 should only be overturned on appeal in cases of abuse of discretion, *see United States v. Lavelle,* 751 F.2d 1266, 1277 (D.C.Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985), we believe that admitting evidence of such nebulous involvement in a prior bad act constitutes just such an abuse.

By contrast, the admission of evidence of the prior fight against Hernandez did not violate Rule 403. His involvement in the fight was substantial; it occurred within a few hours of the arrest. Given that under Rule 403 the balance is tilted toward admission of evidence, *United States v. Moore,*

---

at 29 (citing Tr. 25–27). This objection, however, on the ground of prejudice under Rules 404 and 403 of the Federal Rules of Evidence is irrelevant to the hearsay character of Donny's statement. The objection failed to bring the hearsay issue to the attention of the trial court and therefore did not limit appellants' waiver of any hearsay objection.

**5.** Indeed, Price himself stated that Lopez-Leyva was *not* involved in the fight:

The Court: I wasn't clear, Mr. Price. The other defendant, Lopez Leyva, was he there at the time you had this altercation or fight with Rolando and Mr. Hernandez?
The Witness: The young man—Yes, he was.
\* \* \* \* \* \*
The Court: Did he partake in that [fight] in any way?
The Witness: No.
The Court: He just watched it?
The Witness: He was shouting something with the rest of them.

The Court: He was shouting?
The Witness: Yeah.
The Court: All right.
Tr. 223–224.

**6.** According to his own testimony Lopez-Leyva was shouting "stop that nonsense." Tr. 331.

**7.** In *Foskey* this court found evidence of a prior arrest inadmissible under Rule 404(b) where appellant's companion had been convicted of the offense charged but not appellant himself. *See* 636 F.2d at 524. The government had attempted to introduce the evidence of the prior arrest in order to show the defendant's intent to possess contraband. *Foskey* thus stands for the proposition that it is error to introduce evidence of a prior bad act of one's companion, committed in one's presence, to prove intent in a subsequent possession case. We find that principle fully applicable to the case at bar.

732 F.2d 983, 989 (D.C.Cir.1984), admission of the evidence of the fight against Hernandez was proper.[8]

■ Even in the case of Lopez-Leyva, this court need not upset the conviction if it determines that admission of evidence of the fight was mere "harmless error." *See* Fed.R.Crim.P. 52(a). An error is deemed harmless if it did not "substantially sway[ ]" the judgment. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). In determining whether an error had such a substantial effect this court will look to three factors. If (1) the case is not close, (2) the issue not central, or (3) effective steps were taken to mitigate the effects of the error, the error is harmless. *See Gaither v. United States*, 413 F.2d 1061, 1079 (D.C.Cir.1969).

Our case satisfies none of these criteria. The case against Lopez-Leyva was quite close: once the evidence of the fight is eliminated, the case against Lopez-Leyva largely turns on the testimony of Officer Myers concerning Lopez-Leyva's gestures toward the area where the gun was found. Although, as noted *infra*, a jury could base a conviction on such testimony, it could just as easily harbor reasonable doubts about Officer Myers' credibility and perception. The issue of motive was therefore central to the prosecution's case: it could turn a close case into a strong one. Finally, although the District Court did instruct the jury as to the limited use of the evidence of the afternoon fight, this instruction merely cautioned against using that evidence to draw inferences concerning character or propensity; it did not suggest that the jury should be especially cautious in using that evidence against Lopez-Leyva given his peripheral presence at the fight.[9] The error was therefore prejudicial and was not mitigated by subsequent instructions. Accordingly we believe a new trial must be ordered for Lopez-Leyva.[10]

■ 2. *Severance.* This court will upset a District Court's decision to deny a motion for severance "only upon a finding of clear prejudice and abuse of discretion." *United States v. Lewis*, 626 F.2d 940, 945 (D.C.Cir.1980); *accord United States v. Daniels*, 770 F.2d 1111, 1115 (D.C.Cir. 1985). The critical determination in evaluating a motion to sever the case of two or more co-defendants is whether a jury could reasonably compartmentalize the evidence introduced against each individual defendant. *See United States v. Sampol*, 636 F.2d 621, 647 (D.C.Cir.1980). The danger that the jury will inappropriately apply evidence against one defendant against a co-defendant is deemed to be particularly great if there is a gross disparity of the quantity and quality of evidence against the two accused. *See id.*

In our case there was no great disparity of the evidence. For example, Officer Myers' testimony concerning Lopez-Leyva's proximity to the weapon and his motion toward it constituted substantial evi-

---

**8.** Moreover, we note that the District Court's instructions minimized the prejudice that might result from a jury treating evidence of the fight as evidence of a propensity to commit crimes. Tr. 230, 522–523.

**9.** *See* Tr. 230–231 (instruction at admission of the evidence); Tr. 522–523 (instruction at close of the evidence).

**10.** We are mindful of Lopez-Leyva's failure to seek a new trial on the basis of the prejudice he suffered from the admission of the evidence of the afternoon fight. But we are also cognizant of our general remedial powers under 28 U.S.C. § 2601 (1982). We therefore find it within our power to order a new trial even when an appellant seeks acquittal instead. *See United States v. Hammond*, 605 F.2d 862, 864 & n. 4 (5th Cir. 1979). *See also* 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2d § 559 at 369 (1982). *Cf. Burks v. United States*, 437 U.S. 1, 17–18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978) (finding that 28 U.S.C. § 2106 gives appellate courts the power to grant the remedy that is "just under the circumstances").

Nor does the Double Jeopardy clause prevent us from ordering a new trial when the appellant did not request such relief. As *Tibbs v. Florida*, 457 U.S. 31, 39–42, 102 S.Ct. 2211, 2216–18, 72 L.Ed.2d 652 (1982), makes clear, ordering a new trial only offends the Double Jeopardy clause when reversal is based on the legal insufficiency of the evidence. *See, e.g., Burks v. United States, supra*, 437 U.S. at 16–18, 98 S.Ct. at 2149–51. As we indicate *infra*, that is not this case.

dence probative of his guilt alone. As for the danger that the jury might not compartmentalize the evidence, it is true that had a jury heard that Lopez-Leyva was present at the afternoon fight, and that he was a friend of the participants, it might have unjustifiably assumed that Lopez-Leyva was involved in that fight. Although we are not sanguine about the effect of limiting instructions, we note that in reviewing the denial of motions to sever courts have tended to accept the presumption that limiting instructions actually function to enable juries to compartmentalize evidence. *See, e.g., United States v. Bruner,* 657 F.2d 1278, 1291 (D.C.Cir.1981). *See also United States v. Givens,* 712 F.2d 1298, 1300–01 (8th Cir.1983), *cert. denied,* 465 U.S. 1009, 104 S.Ct. 1005, 79 L.Ed.2d 237 (1984). This is true even when there is a risk that a jury will improperly use evidence of an incident in which the co-defendant was clearly involved but as to which the defendant seeking severance was only peripherally involved. *See, e.g., United States v. Ventura,* 724 F.2d 305, 312 (2d Cir.1984) (denial of severance proper when jury instructed to disregard evidence concerning fraudulent conduct by co-defendant that occurred after defendant's participation in scheme had ended).

Thus had the evidence been admitted against Hernandez alone, an appropriate limiting instruction might well have insulated Lopez-Leyva from any undue prejudice. That such an instruction was not given was due to the District Court's erroneous decision to *admit* the evidence of the fight, not to its failure to sever the trials of the two defendants. We therefore find no error in the District Court's denial of Lopez-Leyva's motion to sever.

B. *The Motions for Judgment of Acquittal*

Appellants allege that because the evidence was legally insufficient to prove possession of the machine gun and silencer,

the District Court erred in denying their motions for judgment of acquittal. In reviewing appellants' motions we must view the evidence most favorably to the prosecution, *see United States v. Davis,* 562 F.2d 681, 683 (D.C.Cir.1977). It is only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt that the motion may be granted. *See United States v. Fench,* 470 F.2d 1234, 1242 (D.C.Cir.), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

■ Applying these principles to the facts of this case, the government clearly produced sufficient evidence to support a conviction of Lopez-Leyva and Hernandez on charges of constructive possession of an illegal firearm. In the case of Lopez-Leyva [11] the government introduced testimony by Officer Myers that Lopez-Leyva was in close proximity to the weapon *and* that he made a gesture toward the weapon immediately following an evasive turn of the car when confronted by a police cruiser. Under such circumstances a jury might conclude that Lopez-Leyva had possession of the machine gun and its silencer. *Cf. United States v. Bethea, supra,* 442 F.2d at 793 (discussing the probative value of gestures toward the space in which contraband was found); *United States v. Reese, supra,* 561 F.2d at 898 (suggesting the probative value of evasive action).

■ In the case of appellant Hernandez, the government's case turned largely on the evidence of the afternoon fight, evidence that suggested a motive for possessing the machine gun. Donny's statement that appellants were looking for Price suggested that the afternoon fight might still have motivated Hernandez as he sat in the backseat of the Toyota. On the basis of such evidence, a jury could well find that Hernandez's purpose in sitting in the Toyota that night was to finish what had been started that afternoon. When this motive is coupled to his proximity to the weapon, a jury could conclude beyond a reasonable

---

11. In evaluating the evidence against Lopez-Leyva we do not consider the evidence of the afternoon fight. As explained *supra,* the introduc-

tion of evidence of the fight against Lopez-Leyva violated Federal Rule of Evidence 403.

doubt that Hernandez was in a position to take control of the machine gun and its silencer. *Cf. United States v. Whitfield, supra,* 629 F.2d at 143 (discussing the probative value of motive in possession cases).

C. *New Trial for Newly Discovered Evidence*

Appellants assert that the trial court erred by denying their motions for a new trial on the ground of newly discovered evidence, and by denying Hernandez's motion for reconsideration of that ruling. The newly discovered evidence at issue consists of two affidavits indicating that, contrary to his testimony at trial, Price did not live at an apartment at 1324 27th St., S.E. During the trial the government consistently claimed that the arrest took place within a short distance of the residence of appellants' putative victim. Tr. 57–58, 505–506. Appellants therefore assert that this newly discovered evidence both eviscerates the link between the afternoon fight and the evening arrest and demonstrates that a key government witness perjured himself.

In denying the motions for a new trial the District Court found that Price lived at the 27th Street address as much as he lived anywhere.[12] The District Court based its conclusion on its reading of the testimony in the separate trial of Rolando Funes, the driver of the Toyota on the night of the

arrest. The District Court therefore concluded that Price did not commit perjury and that the essential link between the afternoon fight and the evening arrest was unbroken: appellants had reason to believe that Price lived at that address, whether or not he actually maintained a legal residence at that site. Memorandum Opinion and Order filed March 12, 1985 at 6–7.

■■■ Appellants now argue that the District Court erred in taking judicial notice of the testimony in the Funes trial when it ruled on their new trial motions. Although we are troubled by the District Court's broad use of its power to take judicial notice of matters outside the record,[13] we cannot consider this argument as appellants have raised it for the first time on appeal.[14] Nor was the District Court's alleged error so obvious or so detrimental to the integrity of the judicial process as to qualify as a "plain error" that may be considered on appeal even though it was not raised in the District Court. *See United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); *United States v. McCord,* 509 F.2d 334, 341 n. 10 (D.C.Cir.1974) (*en banc*).

■■■ Putting the issue of judicial notice to one side, we have no basis for disputing the District Court's conclusion that Price

12. According to the District Court, Price had a somewhat nomadic lifestyle. The District Court concluded, however, that Price regularly slept in his car in the alley behind the apartment and used the apartment, which apparently belonged to his grandfather, for washing and cooking. Memorandum Opinion and Order filed March 12, 1985 at 5–6.

13. *See United States v. Dancy,* 510 F.2d 779, 787. n. 43 (D.C.Cir.1975) (suggesting that a court cannot take judicial notice of testimony in another proceeding if it seeks to "establish as factual the testimony presented therein").

14. *See Turner v. United States,* 416 F.2d 815, 816–17 (D.C.Cir.1969) (appellant waived all objection to the trial court's decision not to put witnesses on under oath at a hearing on a new trial motion when he failed to raise the issue in the District Court); *United States v. Troche,* 213 F.2d 401, 403 (2d Cir.1954) (appellant waived objection to trial court's decision not to compel

testimony of key recanting witness at hearing on new trial when he failed to raise the issue in the District Court).

Appellants had ample opportunity to raise the question of judicial notice in the District Court. Indeed Hernandez filed a motion for reconsideration alleging several defects in the Memorandum Opinion and Order denying the motions for a new trial; the judicial notice question was not raised. Concededly, our case law does not require appellants to have precisely labeled their objections in the District Court. *Cf. United States v. Daniels,* 770 F.2d 1111, 1114–15 (D.C. Cir.1985) (noting that in pretrial motions a defendant need merely have stated facts and arguments that make clear the basis of his objections). Hernandez's motion for reconsideration, however, did not even implicitly object to the District Court's judicial notice of testimony in the Funes case.

did not commit perjury. We therefore [15] review the denial of the motion for a new trial under the five-prong test of *Thompson v. United States*, 188 F.2d 652, 653 (D.C.Cir.1951):

> To obtain a new trial because of newly discovered evidence (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would *probably* produce an acquittal. * *

(Emphasis added; citations omitted).

The affidavits introduced by appellants arguably satisfied the first two prongs of the *Thompson* test, but they do not pass muster under the third, fourth, and fifth requirements. As the District Court noted, the mere fact that Price did not maintain a legal residence at the 27th Street apartment could not possibly affect the jury's verdict. The fact that Price "lived" at that apartment for all practical purposes, combined with testimony that appellants' associate Funes knew that Price "lived" in that area, Tr. 258, linked the arrest site to a place that appellants might think was close to Price's home. As the District Court concluded, evidence of Price's mischaracterization of the manner in which he "lived" at the 27th Street apartment was therefore merely impeaching evidence; it could not reverse the jury's verdict on a material issue. We therefore affirm the District Court's denial of appellants' motions for a new trial and of Hernandez's motion for reconsideration of that ruling.

## IV. Conclusion

Because admission of evidence of a "prior bad act" to which appellant Lopez-Leyva was not a party unduly prejudiced his trial, we vacate the verdict and remand his case for a new trial untainted by such prejudicial testimony. We do so even though we affirm the denial of his motion for severance, the denial of his motion for judgment of acquittal, and the denial of his motion for a new trial on the basis of newly discovered evidence. As for appellant Hernandez, however, we find his challenges without merit. We affirm his conviction, the denial of his motion for judgment of acquittal, the denial of his motion for a new trial, and the denial of his motion for reconsideration.

*Affirmed in part and vacated and remanded in part.*

DAVIS, Circuit Judge, concurring in part and dissenting in part:

I join the court in affirming Hernandez's conviction and in all of Judge Wright's opinion except for the holding that Lopez-Leyva's conviction must be reversed (and his case remanded for a new trial) because he was unduly prejudiced by the admission as to him of the evidence of a "prior bad act." Instead I would affirm the conviction of Lopez-Leyva as well as that of Hernandez.

In my view, the evidence as to the fight with Price was properly admissible as to Lopez-Leyva because (a) whether or not he was himself as directly involved in that fray as was Hernandez and whether he was encouraging the actual fighters, there was substantial evidence that Lopez-Leyva was a friend of both Hernandez and Funes, but not of Price, (b) a reasonable inference from his "participation" is that he was quite aware of the fight and of the line-up of the parties to that struggle (Hernandez and Funes vs. Price), and (c) the extent of his "participation" in the fight—whether it was encouragement to his friends or an attempt to get them to stop fighting—presented a reasonable motive for his later activities in the car which were found by

---

**15.** Because there is no basis for finding that Price committed perjury we have no occasion to consider whether the more lenient standard of *Larrison v. United States*, 24 F.2d 82 (7th Cir. 1928), should control. *Larrison* applies only if the District Court is "reasonably well satisfied" that a government witness has committed perjury. *Id.* at 87–88.

the jury to be illegal possession of a fire-arm in connection with an effort to take vengeance on Price. And in view of the evidence before the jury (Lopez-Leyva was shouting "something" unknown in Spanish and did not partake in the fight), I fail to see any undue prejudice to him in allowing the jury to consider the fight evidence as to him. For Lopez-Leyva the only relevance of the admission of the fight evidence was that it showed that he clearly knew about the incident and that his friends were aligned against Price. That was enough to show his motive but was not prejudicial to him in any true sense.