**UNITED STATES of America**

**v.**

**David G. MOONEY, Defendant.**

**Crim. No. 92–0032–LFO.**

United States District Court, District of Columbia.

March 31, 1992.

Maurice Ross, Asst. U.S. Atty., Washington, D.C., for U.S.

James R. Holloway, Asst. Federal Public Defender, Washington, D.C., for David G. Mooney.

## MEMORANDUM AND ORDER

OBERDORFER, District Judge.

Defendant was indicted in this United States District Court as a formerly convicted felon who on January 7, 1992, it was alleged, unlawfully and knowingly received and possessed a firearm, a R.G. Industries .22 caliber revolver, which had been possessed, shipped and transported in and affecting interstate and foreign commerce.

The prosecution offered the testimony of police officers that, armed with a search warrant, they entered premises at 236 Eye Street, S.W. at about 8:00 p.m. on January 7, 1992, expecting to find drugs. They found none. On the second floor they entered a bedroom. There they observed defendant lying on a bed, awake, covered by a sheet. They stood him up.[1] He was not clothed. They asked him to dress. He did so by donning clothing strewn around the floor and furniture of the bedroom. While defendant was taken downstairs by two of the officers, others searched the bedroom and a crime scene investigator took photographs. After the police had taken defendant downstairs, he asked them to retrieve his glasses hanging from the fan beside the bed, which they did (*See* Prosecution Exhibit 4).

In the course of the search the officers opened the second drawer of a dresser a few feet from the bed where they found a loaded .22 caliber revolver, a box and several loose rounds of .22 caliber ammunition, and a manilla envelope (approximately 5″ × 8″)[2] under a piece of clothing (a skirt or a pair of pants), all of which were photographed as they lay in the drawer (Prosecution Exhibit 7). Another photograph of the drawer from a distance showed other portions of cloth, possibly clothing, which were not identified by testimony and are unidentifiable from the photograph (Prosecution Exhibit 8). None of the items of clothing was produced at trial. Inside the envelope were, among other things, a copy of Jet Magazine, photographs of unidentified men and women, and several Mickey and Minnie Mouse cards. There was also in the envelope a folder containing photographs of defendant and his mother (presumably Dorothy Mooney), defendant with friends, and unremarkable photographs of several young women, some of which bear inscriptions to defendant. Finally, there were birthday notes and personal letters from Dorothy Mooney to defendant. None of them have recent dates (Prosecution Exhibit 11).

On top of the dresser there was a black pouch with a strap which could be secured around a person's waist. It was produced (Prosecution Exhibit 12). Inside the pouch were two pieces of identification (a Non–Drivers Photo I.D. card issued on September 5, 1991 to David Mooney at an address in Landover, Maryland and a driver's li-

---

1. As the officers stood defendant up, a steak knife fell to the floor on the left side of the bed (Prosecution Exhibit 4). Officer Hickey testified that the knife fell from the bed and Officer Rivera testified that it fell from between the mattresses. On cross-examination both officers conceded that they did not know where the knife fell from. Defendant was not charged with possession of the knife and neither the prosecution nor defense drew any inferences from the presence of the knife near the bed in its closing argument.

2. The manilla envelope bears a name and two numbers which are partially blocked out by what appears to be the same ink and pen used to label the envelope. The envelope appears to be addressed to one Thomas McCloud, a person not identified, and the blocking out of the name or the markings on the face of the envelope ("D. Mooney # 192–961" and "Picture's") are not explained.

cense belonging to a third party), a picture, a few business cards, and several razor blades. An outside pocket of the pouch contained, among other things, a Maryland driver's license issued on October 18, 1991, slightly more than a month after the issue date of the Non–Driver's I.D., to David Mooney at an address in Silver Spring, Maryland.

Other police photographs show, among other things, a quantity of breakfast food on one table in the room (Prosecution Exhibit 6) and various lotions and cosmetics (e.g., Suave and Massengill products) on another table there (Prosecution Exhibit 5). Also on the table with the cosmetics was a pink electric fan and a clock. Next to the table containing the cosmetics on a separate stand was a portable TV on top of which there was what appears to be a Vaseline jar. There were two teddy bears, one next to the TV and the other on a shelf with some of the food. The closet in the room appears to be empty except for two belts and the edge of another unidentified piece of clothing (Prosecution Exhibit 5).

The prosecution asserts that the single piece of clothing visible in the photograph of the second drawer (Prosecution Exhibit 7) is a pair of men's pants, which, the prosecution argues, corroborates the theory that the gun belonged to defendant. The prosecution, however, conspicuously failed to produce the item of clothing. It is impossible to discern from the photograph of that drawer whether the article was a skirt or a pair of pants, and if a pair of pants, whether it was a man's garment or a women's garment and whether, if it was a man's garment, it would fit the defendant. None of the other items in the photographs, with the possible exception of one or both of the belts hanging in the closet, could surely be attributed to a male occupant, and appear to the eye more like articles belonging to a female.

■ The only direct testimony about defendant's presence at 236 Eye Street, S.W. at times other than at 8:00 p.m. on January 7, 1992, when he was arrested, was the testimony of the lessee of the premises, Angela Trevathan. She was not called by the prosecution;[3] she was called by the defense after she was identified and discussed by a police officer in response to defense cross-examination questions.[4] She testified on direct examination for the defense that the room in which defendant was arrested was rented to and occupied by Cheryl Thompson.[5] In addition, Trevathan testified that defendant was Cheryl's boyfriend and that he "stayed with" Cheryl two or three nights a week, but did not "live" there. Ms. Trevathan also testified that defendant was related to her by marriage and that she had known him for a very long time.

On rebuttal, Officer Luis Rivera testified that he interviewed Ms. Trevathan alone in the courthouse while the trial was in progress and that he elicited from her a statement that Cheryl had lived in the room for six months and that defendant had "moved in" and lived there for five months. In sur-rebuttal the defense counsel's investigator testified that on March 9, 1992, he interviewed Ms. Trevathan at her home and that she told him that defendant was Che-

3. The prosecution subpoenaed Ms. Trevathan only as the trial began, after defense counsel announced his intention to call her as a witness.

4. Trevathan was first identified in the cross-examination of Sergeant Hickey, the supervisor in charge of the raid on her home. On cross-examination of Sergeant Hickey, defense counsel elicited his testimony (albeit hearsay) that Ms. Trevathan had told the Sergeant that defendant "stayed" at the premises but that she was vague as to what "stay" meant to her.

5. It is conspicuous that neither the prosecution nor the defense called Cheryl Thompson as a witness although it was obviously the government's burden to prove its case. Defense counsel proffered in his opening statement Thompson's testimony to the effect that the gun belonged to her. When defense counsel made this statement, the Court appointed independent counsel for Thompson. She was not called by either party. That was troubling and it, no doubt, would have been very troubling for a jury. However, what the defense counsel said is not evidence and it is inappropriate for a trier of fact to speculate as to what she told her appointed counsel, whether she would have exercised her constitutional right to refuse to testify, or, if she had testified, what she would have said.

ryl's boyfriend, that he was "over a lot," and that he "stayed overnight" a couple of times a week. On cross-examination by the prosecution the investigator further testified that Ms. Trevathan said she knew nothing about the gun. In closing argument, the prosecution characterized Ms. Trevathan's testimony, contradicted and confused as it was by what she told Rivera and the defense investigator, as "incredible."

The police took no fingerprints although the crime search officer conceded that the barrel and other parts of the gun might have borne them. None of the clothing in the room was recovered or offered into evidence to establish, much less corroborate, the inference the prosecution sought to establish: that defendant lived in the room. It has failed to prove beyond a reasonable doubt by credible evidence that he lived there. The prosecution did not prove that any of defendant's possessions were in the room except the pouch on the dresser, the eyeglasses on the fan, the clothes on the floor and furniture, and the manilla envelope at the bottom of a closed drawer. It is more likely than not likely that the pouch, the clothes, and the eyeglasses were literally on defendant's body when he arrived and were hastily removed as he stripped to go to bed. The envelope alone cannot reasonably establish that defendant had dominion and control over the room and its contents. Nor can the envelope establish that the gun belonged to defendant, despite the fact that it was found in the same drawer with the gun. In all the circumstances there is not sufficient connection between the gun, which was in the front of the drawer, and the envelope, which was under clothing that was not produced, to carry the prosecution's burden of proving defendant's constructive possession of the gun beyond a reasonable doubt.

### Conclusions

█ Decisions in this Circuit in criminal cases in which the prosecution relies on circumstantial evidence to prove constructive possession of guns and drugs teach

that circumspection and caution are in order in appraising the government's reliance on circumstantial evidence to prove constructive possession beyond a reasonable doubt. As the Court of Appeals has twice stated, with emphasis: "constructive possession 'should not be lightly imputed to one found in another's apartment or home.' *United States v. Holland,* 445 F.2d 701, 703 (D.C.Cir.1971)." *United States v. Long,* 905 F.2d 1572, 1576 n. 7 (D.C.Cir. 1990). Elsewhere, the Court of Appeals has stated:

> First, mere proximity to contraband is not enough to carry a case of constructive possession to the jury. *United States v. Pardo,* 636 F.2d 535, 549 (D.C.Cir.1980); *United States v. Whitfield,* ... [629 F.2d 136 (D.C.Cir.1980)] at 143; *United States v. Holland, supra,* 445 F.2d at 702–03; *United States v. Bethea,* 442 F.2d 790, 793 (D.C.Cir.1971). Second, mere knowledge of the presence of contraband does not constitute constructive possession. *See United States v. Pardo, supra,* 636 F.2d at 549. Nor is mere friendship probative of constructive possession. *See United States v. Whitfield, supra,* 629 F.2d at 143 (mere friendship between driver and passenger in a car, combined with proximity to narcotics, did not create an inference of constructive possession of the narcotics). *See also United States v. Holland, supra,* 445 F.2d at 703 *(fact that defendant was found in close proximity to the contraband in question and in an apartment belonging to someone with whom the defendant was having a love affair did not create an inference of constructive possession.)*

*United States v. Hernandez,* 780 F.2d 113, 116–17 (D.C.Cir.1986) (emphasis added).

█ Here the prosecution's failure of proof is palpable, even though this case took approximately a full day and a half to try without the interruptions inherent in jury trials. The prosecution produced no evidence of actual possession. No witness ever saw the defendant with this or any other gun,[6] no witness had ever seen him

---

**6.** The indictment alleged and the prosecution

proved that in 1980 defendant had been convict-

touch either the second drawer or the dresser. The only relevant direct evidence, apart from the testimony of Ms. Trevathan, correctly described by the government as incredible, and second hand accounts of her out of court statements, was defendant's presence in the bedroom when he was arrested, the envelope in the drawer and the pouch found on top of the dresser. It is reasonable to infer from the circumstances that the defendant was, in effect, "wearing" the pouch when he entered the room, and that he removed it, as he did his glasses and his clothes, before he went to bed. It is more likely than not likely that the gun and envelope were put in the drawer at some other time; by whom can only be inferred by extrapolation tantamount to speculation. The location of the envelope underneath clothing at the bottom of the drawer and the gun uncovered at the front of the drawer suggests that they were placed in the drawer at different times, and, quite possibly, that the envelope was placed there before the gun. In the circumstances, defendant's mere presence in the bedroom at the time of his arrest does not effectively corroborate any evidence that the gun in the closed second drawer was under his dominion and control.

The strongest evidence offered by the government to establish some nexus between the defendant and the gun was the envelope. Again, it is just as reasonable to infer that defendant had left the envelope some place other than in the drawer and that Cheryl, rather than defendant, placed it in the drawer under the piece of clothing. In the circumstances, there is a failure of the proof required for a criminal conviction that on January 7, 1992, defendant, and not Cheryl, "received and possessed" the gun.

In argument, the prosecutor suggested from the fact that there were razor blades in the pouch, that defendant was a drug dealer. In appraising this evidence, it is appropriate to bear in mind the observations of the Court of Appeals when reviewing another .22 caliber case. *United States v. Bruce*, 939 F.2d 1053, 1055 (D.C.Cir.1991). There, a four shot .22 caliber Derringer pistol, said the Court, "... is hardly the sort of weapon a drug dealer would employ for protection against an effort to penetrate a crack house." In many circumstances, the size and weight of a weapon might be immaterial. Here, however, the government had the burden of proving beyond a reasonable doubt that this defendant had constructive possession of a .22 caliber revolver lying in a drawer

---

ed in Maryland of robbery with a deadly weapon. There was no evidence that defendant was armed with a gun, let alone the gun in question. Defendant filed a motion *in limine* to preclude evidence or reference to his prior conviction for armed robbery. The only cognizable evidence of the prior conviction is the fact defendant was convicted of an unidentified felony in 1980. *See United States v. Daniels*, 770 F.2d 1111, 1114 (D.C.Cir.1985). Recognizing that the statute federalizing the crime of possession of a firearm by an ex-felon "provide[d] federal prosecutors with a powerful tool for circumventing the traditional rule against introduction of other crimes evidence," our Court of Appeals has observed:

We do not believe Congress had such a tactic in mind ... and we do not believe the federal judiciary should encourage or countenance this use of the law [*i.e.*, including a possession count in an indictment simply to introduce prior convictions]. The exclusion of other crimes evidence is not simply a "technicality" designed to prevent law enforcement personnel from doing their job; it reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence....

*Id.* at 1118. The same analysis applies when a single count of possession of a firearm by an ex-felon is tried to a court without a jury. Defendant's prior conviction for armed robbery is not admissible, or cognizable in a bench trial, to prove that defendant had constructive possession of the revolver in the closed drawer in Cheryl's room. *See* Fed.R.Evid. 404(b) ("Evidence of other crimes ... is not admissable to prove the character of a person or to show action in conformity therewith"); *Daniels*, 770 F.2d at 1116 ("[e]ven when a trial judge carefully instructs the jury regarding the limited significance it should give to evidence of other crimes, prejudice to the defendant is 'well-nigh inescapable'") (quoting *United States v. Carter*, 482 F.2d 738, 740 (D.C.Cir.1973)). Instead, the *nature* of the prior felony, like the *quantity* of drugs involved in possession with intent to distribute charge, is not a constituent element of the offense of possession of a weapon by an ex-felon. *See United States v. Patrick*, No. 90–3178, slip op. at 6 n. 5, 959 F.2d 991, 995 n. 5 (D.C.Cir. Mar. 17, 1992). The substance of the prior felony is relevant only to punishment and should be considered only at sentencing and not in determining guilt or innocence.

in a room occupied by a woman, whom he visited from time to time. If the weapon had been a .38 caliber magnum or some other heavy weapon, one could possibly draw an inference that it belonged to defendant and not his girlfriend. The smaller pistol here, by contrast, is of the weight, configuration, and caliber which would be as easily handled by a small person and is not a likely weapon chosen by a man, whom the prosecution presented as presumably a drug dealer. The prosecution has failed to carry its burden of proving with credible evidence beyond a reasonable doubt that the defendant had actual or constructive possession of the gun in question.

The Clerk will enter a judgment of acquittal.

It is so ORDERED.