976 F.2d 1445
 298 U.S.App.D.C. 141
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES
v.
James Arthur SULTRY, Appellant.
UNITED STATES
v.
Harvest Benedict SULTRY, Appellant.
 Nos. 91-3104, 91-3106.
 United States Court of Appeals, District of Columbia Circuit.
 Sept. 23, 1992.
 
 Before MIKVA, Chief Judge, HARRY T. EDWARDS and RUTH B. GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These appeals from judgments of conviction were considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of counsel. Upon full review of the issues presented, the court is satisfied that appropriate disposition of the appeals does not warrant a published opinion. See D.C.Cir. Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the judgments of conviction be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15(b)(2).
 
 MEMORANDUM
 James Sultry's appeal
 
 4
 James Sultry and his brother, Harvest Sultry, were convicted of distributing cocaine base ("crack") on November 15, 1990 in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). In a second count of the same indictment, James Sultry alone was charged with possession with intent to distribute more than 50 grams of cocaine base on November 20, 1990 in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). James Sultry was convicted on that count as well. He challenges his convictions on multiple grounds. We turn first to his argument that the evidence did not suffice to establish his constructive possession of the crack involved in the possession with intent to distribute charge.
 
 
 5
 The November 20, 1990 police search turned up in the apartment's one bedroom paper items naming or addressed to James Sultry. Further, his mother, Clara Sultry, affirmed in her testimony that her son James was the one who slept in the apartment's sole bedroom. From this evidence, the jury could infer that James Sultry resided in the apartment. Constructive possession does not require exclusive control, so that James Sultry's argument concerning the presence of other people in the apartment when the police searched the premises on November 20 (and his absence at the time) is unavailing. See United States v. Jenkins, 928 F.2d 1175, 1179 (D.C.Cir.1991) (recognizing that people usually know what takes place in their homes).
 
 
 6
 Indicating that James Sultry was actively involved in drug sales from the apartment, Officer Curtis, who made the November 15 undercover buy, testified that James Sultry instructed Harvest Sultry to serve crack to Curtis. Officer Stroud, testifying as an expert, linked the sale to Officer Curtis to the 138 bags of twenties found by the police. Stroud testified to the similarity in packaging between the three ziplock bags sold to Curtis for $50 and the $20 quantities found in the apartment five days later. See United States v. Raper, 676 F.2d 841, 848 (D.C.Cir.1982) (expert's testimony regarding drug distribution operating procedures strengthens inference of constructive possession). Stroud explained that operations selling only twenties sometimes accommodate customers requesting a fifty by serving them three bags of twenties (worth $60) for only $50. In sum, the jury reasonably could infer from the testimony of Curtis and Stroud James Sultry's knowledge of the stash and his "dominion and control" over the drugs. See United States v. Staten, 581 F.2d 878, 883 (D.C.Cir.1978).
 
 
 7
 James Sultry's remaining arguments come too late and lack heavy weight. He forfeited his hearsay objection to Officer Moore's testimony by not raising it contemporaneously. See Passaic Daily News v. NLRB, 736 F.2d 1543, 1554 n. 15 (D.C.Cir.1984). In view of Curtis' testimony regarding James Sultry's part in the November 15 sale and, further, the similarity between the crack packets sold on November 15 and the drugs seized on November 20, we cannot rank Moore's testimony as having the "substantial and injurious" impact necessary to justify upsetting the verdict. See Kotteakos v. United States, 328 U.S. 750, 776 (1946).
 
 
 8
 Nor do we find that the district court abused its discretion when it refused to allow James Sultry's counsel to comment in closing argument about the absence of fingerprint evidence. The trial court has "broad discretion" to control the scope of closing argument, and exceeds that discretion only when it prevents counsel from "making a point essential to the defense." United States v. Sawyer, 443 F.2d 712, 713 (D.C.Cir.1973). Here, the defendant has not shown that the absence of fingerprints was of more than marginal utility to his defense. In the trial court, James Sultry's counsel sought to argue only that it "would have been helpful" if fingerprints had been taken. The only attempt James Sultry's counsel made to elicit testimony on fingerprints concerned the exterior of the wall fixture. The presence or absence of prints on the fixture, however, would have had little probative value for James Sultry's defense. James Sultry did not introduce evidence showing that fingerprints could have been taken from the contraband itself. We have recently observed that "negative evidence" such as the prosecution's failure to introduce fingerprints may be relevant and admissible, provided the defendant does not seek to draw from it unsupported inferences. See United States v. Hoffman, 964 F.2d 21, 24 (D.C.Cir.1992). It does not follow, however, that a district court abuses its discretion when, as in this case, it refuses to allow a defendant's counsel at closing to refer to negative evidence of little weight and for which the defendant has failed to lay an adequate foundation.
 
 
 9
 Given her relationship to the defendants and her presence in the apartment at the time of the November 20 police search, Rosa Sultry, sister of James and Harvest Sultry, could well have feared self-incrimination, and therefore properly claimed her Fifth Amendment privilege. Only on appeal did James Sultry suggest that the district judge should at least have narrowed the scope of Rosa Sultry's privilege. See United States v. Thornton, 733 F.2d 121, 126-27 (D.C.Cir.1984). His assertion that Rosa Sultry would testify that the police beat up Leonard Catlett on November 20, moreover, did not bear on James Sultry's culpability for the offenses with which he was charged.
 
 
 10
 We cannot agree that Rosa Sultry waived her Fifth Amendment privilege by testifying before the grand jury, for nothing in the record shows her awareness of the privilege when she so testified. See United States v. Miller, 904 F.2d 65, 67 (D.C.Cir.1990) (witness must be aware of Fifth Amendment right when testifying before grand jury to constitute a waiver of the privilege at trial). She was, we note, unrepresented by counsel at the time of her appearance before the grand jury.*
 
 
 11
 James Sultry gives us no indication of the impact Rosa Sultry's grand jury testimony would have had on the jury and we have no basis for holding his attorney's assistance ineffective for failing to request a transcript. See Strickland v. United States, 466 U.S. 668, 687 (1984).
 
 Harvest Sultry's appeal
 
 12
 Harvest Sultry urges that the drug distribution charge against him based on the November 15 episode was misjoined with the charge solely against James Sultry based on the November 20 events. See Fed.R.Crim.P. 8(b). Harvest Sultry failed to file a written motion to sever as specifically instructed by the district court, however. He therefore forfeited the defense, see Fed.R.Crim.P. 12(b)(5) and 12(f); United States v. Bailey, 675 F.2d 1292, 1294 (D.C.Cir.), cert. denied sub nom. Walker v. United States, 459 U.S. 853 (1982), and has not made the showing of outcome-affecting prejudice required to overcome the forfeiture. See Kotteakos, 328 U.S. at 776.
 
 
 13
 Most of the evidence presented at trial, Harvest Sultry asserts, concerned James Sultry's November 20 offense. In the circumstances presented, Harvest Sultry maintains, the joinder inevitably was prejudicial. Harvest Sultry argues that the proof concerning the November 15 episode, standing alone, fell short of establishing his identity beyond a reasonable doubt. We disagree.
 
 
 14
 Officer Curtis' testimony and identification of Harvest Sultry from a photo spread qualified as "independent and substantial evidence" of Harvest Sultry's identity. See United States v. Bruner, 657 F.2d 1278, 1290 (D.C.Cir.1981). Defendants' mother, Clara Sultry, testified that her son Harvest looks older now than he did in the photograph, taken years earlier, from which Curtis identified him. Nevertheless, the jury reasonably could have concluded from Curtis' testimony, including his in-court identification, that Harvest Sultry was the person who sold the crack on November 15.
 
 
 15
 Furthermore, the jury readily could have compartmentalized the evidence concerning each of the defendants and the crimes charges. United States v. Hernandez, 780 F.2d 113, 119 (D.C.Cir.1986) (citing United States v. Sampol, 636 F.2d 621, 647 (D.C.Cir.1980)). Harvest Sultry argues that the district court's jury instructions about applying "the evidence ... [to each defendant] as if he were being tried alone" did not adequately inform the jury that some of the government's evidence did not apply to Harvest Sultry. But he did not object to the court's instructions at trial or propose more precise language for the charge. The district court explicitly instructed the jury that count two applied only to James Sultry and that "[t]he guilt or innocence of any one defendant of any of the crimes charged should not control or influence your verdicts as to the other defendant." Those instructions surely do not constitute plain error, and hence do not provide cause for vacating Harvest Sultry's conviction. See Fed.R.Crim.P. 30 and 52(b); see also United States v. Halliman, 923 F.2d 873, 885 (D.C.Cir.1991).
 
 
 16
 Nor can we accept Harvest Sultry's argument regarding prejudice in his sentencing. But for the joinder of the crack distribution charge against him with the possession charge against James Sultry, Harvest Sultry asserts, the United States Attorney's Office, consistent with past practice, would have prosecuted him in D.C. Superior Court, not in U.S. District Court. In a local prosecution, he would not have been exposed to the harsh federal sentencing guidelines. Beyond question, however, federal jurisdiction existed for the charge against Harvest Sultry. The possibility that Harvest Sultry might have gotten a more lenient sentence in another court provides no ground for upsetting the sentence he received.
 
 
 
 *
 The government acknowledged at oral argument that, contrary to standard Department of Justice practice, Rosa Sultry was not informed of her Fifth Amendment rights when she appeared before the grand jury. Counsel undertook to convey the court's concern to his superiors so that there will be no repeat of this deviation from standard operating practice