Reginald D. **HILL**, an infant, by his Guardian, Viola Greer, Appellant,

v.

Herbert G. **McDONALD**, et al., Appellees.

No. 80–1110.

District of Columbia Court of Appeals.

Argued May 19, 1981.

Decided Jan. 29, 1982.

William F. Mulroney, Washington, D. C., for appellant.

Gary W. Brown, Washington, D. C., with whom James F. Bromley, Washington, D. C., was on the brief, for appellees.

Before HARRIS and PRYOR, Associate Judges, and GALLAGHER, Associate Judge, Retired.

GALLAGHER, Associate Judge, Retired:

Appellant Reginald D. Hill (hereinafter "Hill"), brought this action against appellees Herbert G. McDonald, *et al.*, the individual partners in an architectural firm (hereinafter "the architects"), for personal injuries Hill suffered in a fall from an apartment house stairway alleged to have been negligently redesigned by the architects. Summary judgment was entered for the architects on the ground that a release given by Hill to the owner and manager of the apartment building (hereinafter "the landlord") in settlement of an earlier suit necessarily discharged the architects as agents of the landlord. Hill appeals from that judgment. Because we find that the trial judge's ruling on the effect of the release was bottomed on his resolution of an issue—proximate cause—which is properly for the jury, we reverse and remand.

The accident which gave rise to this suit occurred on September 4, 1972, in an apartment house located at 1308 Clifton Street, N.W. Hill, then about eight years of age, resided with his great-grandmother and guardian, Mrs. Viola Greer, on the fifth floor of the building. On the morning of September 4, Hill was on a fire exit stairway leading to a basement playroom when he allegedly slipped on a puddle of water, slid under the stair's protective handrail, and fell five stories to the basement below. He was severely injured.

■ In 1976, Hill brought an action (CA 5371–76) against the landlord of the building. The complaint alleged the creation and maintenance of two separate dangerous conditions: "the dangerous ... protective railing"[1] and "the puddle of water on which the infant plaintiff slipped." After preliminary discovery revealed that Hill intended to prove that the railing was dangerous because defectively designed, the landlord filed a third-party complaint against the architects, who had been engaged by the landlord to draw up plans and specifications for rehabilitation of the building in 1968–70. The third-party complaint prayed not only for indemnification (on the ground that the landlord was only secondarily liable for any torts of its agent, the architects), but also for contribution (on the ground that any primary negligence of the landlord was concurrent with that of the architects). Significantly, the architects' answer to this third-party complaint was (as contained in their pretrial statement) that "if Third-Party Plaintiffs [the landlord] are liable to the plaintiff then such liability, if any, was or will have been caused by their own sole, intervening or supervening negligence." Thus, both the landlord and the architects in effect acknowledged in their pleadings that vicari-

---

1. A landlord owes its tenants a non-delegable duty not to create an unsafe condition on the premises, and is thus vicariously liable for the torts of its independent contractors (e.g., architects), notwithstanding the inapplicability of the doctrine of *respondeat superior*. *Bailey v. Zlotnick*, 77 U.S.App.D.C. 84, 85, 133 F.2d 35, 36 (1942) (per Rutledge, J.), *appeal after re-*

mand, 80 U.S.App.D.C. 117, 118, 149 F.2d 505, 506 (1945); *see Hanna v. Fletcher*, 97·U.S.App. D.C. 310, 317–18, 231 F.2d 469, 476–77, *cert. denied*, 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1051 (1956). *Accord*, W. Prosser, The Law of Torts § 71, at 470–71 (4th ed. 1971); Restatement (Second) of Torts § 421 (1979).

ous liability was not the *sole* basis upon which the landlord's liability was predicated; the landlord was also alleged to have been independently negligent in allowing the puddle of water to form.

After preliminary settlement negotiations proved fruitless, the case proceeded to trial on February 5, 1979. At the close of Hill's case, and before a ruling on the landlord's motion for a directed verdict, the parties entered into further settlement negotiations. At oral argument before this court, counsel for the architects stated that his clients were privy to these negotiations, but it soon became apparent that Hill was interested in settling only with the landlord. Ultimately, Hill, in consideration of $75,000, executed a "Release and Settlement of Claim" purporting to discharge *only* the landlord. The architects did not sign this agreement in any capacity, although the printed form does recite that "It is further agreed that in the event other parties are responsible to [Hill] for damages as a result of this accident, the execution of this agreement shall operate as a satisfaction of [Hill's] claim against such other parties to the extent of the pro rata share of the parties herein released [the landlord]." A Consent Judgment in favor of Hill and against the landlord was subsequently issued by the court. A praecipe requesting the clerk to enter the consent judgment paid and satisfied and to dismiss with prejudice the landlord's third-party complaint against the architect was filed the same day.

On April 19, 1979—less than six weeks after settling with the landlord—Hill filed a separate suit (CA 4962–79) against the architects. The claimed negligence was that the stairwell railing "failed to meet the standards in the architectural field for design and safety." More than one year after institution of this suit, the architects moved for summary judgment, chiefly on the ground that Hill's settlement of his claim against the landlord barred his later suit against the architects engaged by the landlord.[2] The motion, opposed by Hill, was argued on July 23, 1980, and granted in open court.

In his ruling from the bench, the motions judge took as his starting point the proposition that the release of a principal releases the agent upon whose account the principal's liability had been predicated. He recognized, however, that Hill's complaint against the landlord, as well as his pretrial statement, had alleged two bases for liability: vicarious liability based on the architects' negligence in failing to make the handrail safe, and direct liability for the landlord's own negligence in failing to detect and remove the puddle. Nevertheless, the judge stated:

It seems to me that the substance of the subject matter must prevail over the form and the substance of the matter is that the accident could not have occurred, even though there had been a slip or a fall on the wet floor, unless the railing was, as was claimed, deficient or unsafe. So that it seems to me that the allegations of personal negligence, insofar as the puddle is concerned, must inextricably be linked with the allegations of imputed negligence. That is, an unsafe condition created by the architect.

Accordingly, it seems to me that however the matter may have been pleaded, this was a case in which the indispensable theory of liability was vicarious liability.

It therefore appears to the court that this case is governed by the proposition of law that the exoneration of a party whose liability is assertedly vicarious, whether the exoneration comes about by

---

2. Alternative grounds advanced were (1) that the architects had done as much as their contract with the landlord required and could not be held to a higher professional standard; (2) that it was the landlord's negligence in (a) allowing the fire exit to be used as a general purpose stairway or (b) permitting the puddle to accumulate which proximately caused plaintiff's injuries; and (3) that any verdict against the architects *should be reduced to account for* the release of the landlord. Suffice it to say that arguments (1) and (2) present questions for a jury, and that consideration of (3) is appropriately deferred until after the jury's verdict.

judgment or by settlement, must lead to the exoneration of the party whose personal negligence was the source of the imputed liability.

It seems clear that the motions judge's ruling was, in essence, grounded on his *finding* that it was the unsafe handrailing which was the proximate cause of plaintiff's injury. There is no other reasonable explanation (or justification) for his conclusion that the "substance" of the suit against the landlord was solely vicarious liability, and that therefore the allegation that the landlord had negligently allowed a puddle to form could be "read out" of the complaint in the earlier suit. The judge necessarily decided that, *as a matter of law*, the proximate cause of plaintiff's injury was the defective handrail and *not* the puddle—or the puddle and handrail combined. This was error.

■ It is well-settled that proximate cause (like negligence) is ordinarily a question of fact for the jury. *Hanna v. Fletcher,* 97 U.S.App.D.C. 310, 314, 231 F.2d 469, 473, *cert. denied,* 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1051 (1956). It is only in cases where it is clear that reasonable men could draw but one conclusion from the facts alleged that negligence and proximate cause become questions of law. *District of Columbia v. Lapiana,* D.C.App., 194 A.2d 303 (1963); *McGettigan v. National Bank of Washington,* 115 U.S.App.D.C. 384, 386, 320 F.2d 703, 705 (1963); *Tan Top Cab Co. v. Shiller,* D.C.Mun.App., 125 A.2d 68, 69 (1956). These cases have been said to be "exceptional." *Hardy v. Hardy,* D.C.App., 197 A.2d 923, 925 (1964); *District of Columbia v. Lapiana, supra* at 304.

■ It cannot be said that reasonable men could only conclude that the allegedly defective railing was the single "but-for"

cause of the plaintiff's injury. The inference to be gleaned from the allegations of both complaints is that the puddle and railing *combined* to produce the accident, and that *each* was a "but-for" cause of the injury. While it can be said that Hill would not have fallen five stories if the railing had been correctly designed, it is equally arguable that he would not have fallen initially if the puddle had not caused him to slip. It is sufficient, however, that a reasonable jury could find the puddle to have been a proximate cause of the injury. For that reason alone, the motions judge's decision that the railing was necessarily the *sole* proximate cause was clearly erroneous.

■ In other words, the first complaint—as amplified by Hill's pretrial statement—alleged not only that the landlord was vicariously liable for the railing, but also that the landlord was a joint tortfeasor[3] with the architects. It is well-established in this jurisdiction that one cannot escape liability for one's own negligence merely because another person, with whom one has no connection, or over whom one has no control, may have contributed to the injury by his wrongful or negligent act. *Hicks v. United States,* 167 U.S.App.D.C. 169, 183, 511 F.2d 407, 421 (1975); *Becker v. Colonial Parking, Inc.,* 133 U.S.App.D.C. 213, 220, 409 F.2d 1130, 1137 (1969); *Metropolitan R.R. Co. v. Jones,* 1 App.D.C. 200, 205 (1893). The law does not recognize a single proximate cause of every injury. There may be several causes concurring to produce the harm. *Ballard v. Polly,* 387 F.Supp. 895, 900 (D.D.C.1975). Two persons whose concurrent negligence causes injury to a third are liable jointly and severally, and their liability will not be affected by the relative degree of negligence, or by the care required of each. *Washington G.R.R.*

---

3. The District of Columbia long ago abandoned the common-law requirement that the defendants have engaged in concerted action to be liable as joint tortfeasors. *See McKenna v. Austin,* 77 U.S.App.D.C. 228, 231, 134 F.2d 659, 662 (1943) ("It is a first principle that liability in tort is several, not joint, however many participate in inflicting the wrong and whether they act separately or in conjunction"). It is sufficient if there are "substantially concurrent" negligent acts each contributing to a single injury. *Gibson v. Bodley,* 156 Kan. 338, 344, 133 P.2d 112, 117 (1943); *see Shaw v. Barnard,* 229 N.C. 713, 715, 51 S.E.2d 295, 296 (1949). *Accord,* W. Prosser, *supra,* § 47 at 205; Restatement (Second) of Torts, §§ 875, 879 (1979).

*Co. v. Hickey*, 5 App.D.C. 436, 470 (1895), *aff'd*, 166 U.S. 521, 17 S.Ct. 661, 41 L.Ed. 1101 (1897).[4] The recently revised Restatement is in accord with these rules, Restatement (Second) of Torts § 879 (1979), as is Dean Prosser, see W. Prosser, *supra*, § 41 at 241. Because the complaint—by any fair construction—alleged that the landlord was guilty of an act of negligence separate and distinct from that of the architect, the motions judge was wrong in holding that "the indispensable theory of liability was vicarious liability."

 The motions judge (and indeed, Hill's trial counsel) took it as established law that the express release of a principal discharges an agent as a matter of law where the principal's liability is solely vicarious in nature. Whatever the merits of that proposition,[5] it is simply not applicable to the instant case. The landlord's liability was not alleged to have been *solely* vicarious in nature; the most that can be said is that vicarious liability was an *alternative* theory of the landlord's liability in the first action. Hill did not allege in the first action that the landlord, though itself inno-

cent, was chargeable with the tort of the architect. He alleged that the landlord was liable for its own negligence, as well as chargeable for the negligence of the architects. There were two alleged wrongdoers to be discharged. In such a case, we think the effect of the release given the landlord is properly ascertained by reference to the law applicable to the release of a joint tortfeasor.

 In the landmark case, *McKenna v. Austin*, 77 U.S.App.D.C. 228, 134 F.2d 659 (1943)—which Dean Prosser has observed "seems to leave nothing more to be said," (W. Prosser, supra § 49 at 304 n.26)—the court moved this jurisdiction decisively away from the common-law rule that the release of one joint tortfeasor discharged all as a matter of law. In *McKenna*, the court held that the effect of a release of a joint tortfeasor was ordinarily a question of fact dependent on two inquiries: (1) did the plaintiff intend to release all wrongdoers or only the particular party named in the release; and (2) did the amount settled for fully compensate the plaintiff, or was it taken merely as the best obtainable compro-

**4.** In *Hickey*, the driver of a horse car drove onto railroad tracks when crossing gates were negligently raised, despite the approach of a train. The plaintiff, a passenger on the horse car, was injured during her fellow passenger's rush to get off the car, which was trapped on the tracks when the gates again closed. In its opinion affirming a judgment for the plaintiff against both the horse car company and the railroad, the Supreme Court stated:

> The act of the driver being a negligent act, and that act being in full force and in the very process of execution at the time the accident occurred, which accident would not have happened but for such negligent act, the fact that another negligent act of a third party contributed to the happening of the accident would not absolve the horse car company. The negligent act of the horse car driver joined with and became a part of the other act in wrongfully lowering the gates, as described, and both acts constituted but one cause for the commotion which naturally resulted therefrom, and on account of both of these acts, as parts of a whole transaction, the injury occurred. [*Washington & G.R.R. Co. v. Hickey, supra*, 166 U.S. at 527, 17 S.Ct. at 663.]

**5.** It is true that the majority of courts hold that the release of either a principal or agent *ipso*

*facto* releases the other, although "[t]he cases ... reveal an amazing divergence of opinion and a conflict in principle as well as in result." Anno., 92 A.L.R.2d 533, 536 (1963). *See, e.g., Sade v. Hemstrom*, 205 Kan. 514, 471 P.2d 340 (1970); *Transpac Construction Co. v. Clark & Groff, Engineers, Inc.*, 466 F.2d 823 (9th Cir. 1972); *Cox v. City of Freeman, Missouri*, 321 F.2d 887 (8th Cir. 1963). Certainly, as a matter of logic, it is hard to see how a *principal* could still be held vicariously liable after the release of its *agent*, the only real wrongdoer. But the converse is not at all obvious. It is thus that a growing minority of courts hold that the release of a principal does not bar suit against the agent for the underlying tort unless the release is so intended. *See, e.g., Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 419 A.2d 674 (1980); *McFadden v. Turner*, 159 N.J. Super. 360, 388 A.2d 244 (1978); *Clark v. Brooks*, 377 A.2d 365 (Del.Super.Ct.1977), *aff'd sub nom. Blackshear v. Clark*, Del., 391 A.2d 747 (1978); *Biles v. Harris*, 521 P.2d 884 (Okl. Ct.App.1974); *Hamm v. Thompson*, 143 Colo. 298, 353 P.2d 73 (1960) (en banc); *Losito v. Kruse*, 136 Ohio St. 183, 24 N.E.2d 705 (1940). *Accord*, Restatement (Second) of Judgments § 95 (Tent. Draft No. 3, 1976).

mise for the settler's liability. 77 U.S.App. D.C. at 231, 233, 134 F.2d at 662, 664. *See also* W. Prosser, *supra*, § 49 at 304; 1 F. Harper & F. Jones, *supra*, § 10.1 at 172–14. Only where the terms of the release "leave no room for doubt" should these decisions be made as a matter of law. *McKenna v. Austin, supra* at 233, 134 F.2d at 664. The parties raise no issue concerning the actual terms of the release.

*Reversed and remanded for further proceedings.*