Daniel Gordon FAISON, et al.

v.

NATIONWIDE MORTGAGE CORPORA-
TION, et al. Richard F. Boddie, fdba—
Ruttenberg, Phelps & Slocum dba—
Phelps, Slocum & Boddie, Appellant.

Daniel Gordon FAISON, et
al., Appellants,

v.

NATIONWIDE MORTGAGE
CORPORATION, et al.

Nos. 85–6045, 85–6105.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 30, 1986.

Decided Oct. 30, 1987.

As Corrected Oct. 30, 1987.

Opinion on Rehearing March 4, 1988.

James L. Blair, Washington, D.C., for appellees/cross-appellants Faison, et al.

John H. Spellman, with whom Robert F. Reklaitis and Robert P. Fletcher, Washington, D.C., were on the brief, for appellant/cross-appellee Richard F. Boddie.

Before MIKVA and BUCKLEY, Circuit Judges, and JAMES B.

PARSONS,* U.S. Senior District Judge for the Northern District of Illinois.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

These two cross-appeals stem from special verdict awards in favor of plaintiffs Daniel and LaShavio Faison, who claim they lost their Washington, D.C. home as a result of a fraudulent loan scheme. Although the jury was fully instructed on the matter of the joint and several liability of joint venturers, the special verdict form provided the jury precluded an explicit finding of joint and several liability. As a consequence, the compensatory and punitive damages awarded on the claim of fraud were individually apportioned among six defendants. The principal issue before us is whether, as a matter of District of Columbia law, the defendants should have been found jointly and severally liable on the fraud claim. We conclude that as that claim involved a single injury, the defendants are jointly and severally liable for the compensatory damages, but are individually liable for the punitive damages.

## I. BACKGROUND

The Faisons' loan, which was ostensibly taken for "business" purposes, was arranged through defendant Norman Tillette, president of Nationwide Mortgage Corporation ("Nationwide"), and four other defendants—Walter Waters and Joseph Hayman who were brokers for the loan, Richard Boddie who acted as settlement attorney, and David Brandt who financed the loan by purchasing the Faisons' promissory note from Nationwide.

At the time of the trial, Daniel Faison was a 36–year–old District of Columbia firefighter. Sometime during the first half of 1982, he discussed his need for a loan with Waters, who was a fellow firefighter. Shortly thereafter, Waters referred Faison to Hayman, who represented that he knew people who could lend him money. Faison testified that he told both Waters and Hay-

man that he needed the loan to refurbish his home in Washington, D.C. Waters testified that Faison told him that he wanted the money to convert his basement into a rental apartment unit. The question of whether the loan was intended for business purposes pervades the trial record.

In June 1982, with the help of Waters and Hayman, Faison completed a Nationwide loan application for a second trust deed in the amount of $14,000. On July 13, 1982, Faison, accompanied by his estranged wife LaShavio, went to settlement on the loan. Settlement took place in the law offices of Ruttenberg, Phelps & Slocum in Falls Church, Virginia. Among those present were Hayman, Tillette, and Boddie, who at the time was an associate of the law firm.

Boddie tape recorded the loan settlement and placed a transcript of that recording in the record. According to the transcript, Daniel Faison's first statement at the settlement was that he intended to use the proceeds of the loan to convert the basement of his house into a rental unit. Boddie subsequently reviewed numerous documents with Mr. and Mrs. Faison, including the settlement sheet, the promissory note, the deed of trust, affidavits concerning the purpose of the loan, and two title documents. Boddie explained each of the charges listed on the settlement sheet, expressly stating that they totalled $5,752.40, leaving net proceeds from the $14,000 loan of $8,247.60.

Boddie made it clear that because the loan was for business purposes, it was not subject to consumer protection laws, including the Federal Truth in Lending Act. He also pointed out that the loan was a one-year interest only balloon loan, with $210 due monthly and the principal due after twelve months, and that a foreclosure might occur if the Faisons were delinquent in their payments.

The Faisons defaulted on the loan in August 1983 and Brandt, who had purchased the promissory note from Nationwide, invoked the foreclosure provisions of

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

the deed of trust. Boddie represented Brandt in the foreclosure proceedings. The Faisons consequently lost their home and brought suit alleging fraud, violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. §§ 28–3901 to –3908 (1981 & Supp.1987), and legal malpractice.

At trial the Faisons claimed that all of the business purpose statements and affidavits at the settlement had been staged by Messrs. Tillette, Hayman, and Boddie; that the tape recording had been manipulated to support that fiction; that throughout the loan application proceedings Daniel Faison had made clear his intention to use the proceeds of the loan for non-business purposes; and that he proceeded with the loan only because Hayman and others had on numerous occasions assured him that the loan would be refinanced before the balloon payment became due.

Defendants Nationwide and Tillette did not respond, and a default judgment was entered against them. The lawsuit against the other four defendants, namely Boddie, Brandt, Hayman, and Waters, proceeded to trial. The first claim was for fraud and misrepresentation. Plaintiffs alleged that each of the defendants made affirmative statements and/or material misstatements or omissions that were not in accord with the facts regarding essential terms of the promissory note and deed of trust. In particular, plaintiffs alleged that

> Nationwide and its agents failed to disclose material facts to Plaintiffs *prior to settlement* on the loan. Said Defendant failed to disclose the principal of the loan; that fees would be charged for a "discount" to Nationwide and for a "broker's fee" to Hayman and/or Waters; that the principal would be due in a balloon payment; that Nationwide, prior to settlement, had arranged with Brandt to have Brandt lend Nationwide the money for the loan, and that no long term refinancing was available.

Complaint ¶ 25(a) (emphasis in original). Plaintiffs further alleged that

> (b) Defendants Nationwide, Tillette, Hayman and Boddie misrepresented and failed to disclose material facts to Plaintiffs at the *time of settlement:* the true interest rate of the loan; Nationwide's discounting arrangement; Hayman–Waters' brokerage arrangement; the unavailability of long term financing; the significance of designating the loan "a business purpose" loan; and Nationwide's "automatic assignment" relationship with Brandt.
>
> (c) Defendants Nationwide and Boddie fraudulently induced Plaintiff Daniel Faison to sign statements to the effect that the loan proceeds had a "business purpose," without explaining to him that such statements had the effect of eliminating protections under the Federal Truth–In–Lending Act, 15 U.S.C. Section 1601 *et seq.*
>
> (d) Brandt's prior knowledge of, cooperation with, and participation in the fraudulent conduct outlined hereinabove inextricably links Brandt to those fraudulent acts.

*Id.* at ¶¶ 25(b)–25(d) (emphasis in original).

Plaintiffs' second claim alleged that defendants Nationwide and Brandt violated various provisions of the District of Columbia Consumer Protection Procedures Act, D.C.Code Ann. §§ 28–3901 to –3908 (1981 & Supp.1987), in that they "made false and misleading representations, failed to state material facts, made and enforced unconscionable terms, and misrepresented their authority to lend, all in connection with the loan made to Plaintiffs." Complaint ¶ 28. Plaintiffs' third claim, characterized as "Legal Malpractice" in the Complaint but redesignated "Negligence" by the trial judge, alleged that Boddie "willfully, and with total disregard for the rights of Plaintiffs, withheld relevant information, offered misleading information, and negligently performed the responsibilities required of them [sic] at the settlement which is the subject of this litigation." *Id.* at ¶ 31.

Plaintiffs sought a total of $200,000 in compensatory and punitive damages "against Defendants Nationwide, Tillette, Boddie, Hayman, Waters and Brandt, joint-

ly and severally, on the basis of Plaintiffs' First and Second Claims." *Id.* at ¶ 33. Plaintiffs also sought $200,000 in compensatory and punitive damages against defendant Boddie on the basis of the malpractice claim, "Boddie's partners being jointly and severally liable on this claim." *Id.* at ¶ 36.

At trial, the judge gave detailed instructions to the jury on the question of joint ventures and the attendant issue of joint and several liability. He specifically commissioned the jury to decide whether any liability stemming from the processing of the Faisons' loan involved a joint venture. Tr. at 1080–82 (jury instructions). Notwithstanding this explicit charge, the special verdict form he provided the jury made no provision for an explicit finding that a joint venture did or did not exist. Instead, the form was divided into four principal paragraphs, the first for damages on the default judgment against Tillette and Nationwide, who were listed together on the form ("Tillette/Nationwide"), and then one for each of plaintiffs' three claims against the remaining defendants.

In paragraphs two through four, the form simply listed the names of each defendant, with blanks after each name to enable jurors to indicate a finding of liability, and the amount of the compensatory and punitive damages, if any, to be awarded against each. The jury found each defendant liable and, in accordance with the special verdict form, awarded compensatory and punitive damages against each defendant individually. We deal here only with the damages awarded on the claim of fraud.

The jury awarded most of the fraud damages, $150,000 ($100,000 compensatory and $50,000 punitive), against Tillette/Nationwide, the defendants in default. The jury awarded another $12,000 ($5,000 compensatory and $7,000 punitive) against defendant Boddie, the loan settlement attorney, and the remainder of the fraud awards, totalling $11,600 ($5,100 compensatory and $6,500 punitive), was apportioned among Waters, Hayman, and Brandt.

During the course of the trial, both sides sought to preserve their rights to move for judgment *non obstante veredicto* ("j.n.o.v."). Tr. at 917–18. In response, the court denied all pre-verdict motions, reserving for the parties instead the option of raising in post-verdict motions any and all issues that could have been raised in a motion for directed verdict. *Id.* at 918–19. In their motion for j.n.o.v., as well as in their present appeal, plaintiffs cite four legal bases for a judgment of joint and several liability: (1) concerted action, (2) vicarious liability, (3) common duty, and (4) single indivisible result. Plaintiffs' Supplemental Memorandum in Support of Motion for Judgment Notwithstanding the Verdict at 4–5; Brief for Faisons at 15–16 (both citing W. Prosser, Law of Torts § 52, at 315–16 (4th ed. 1971)).

Plaintiffs maintain that all four of these legal requisites are met in this case and therefore a judgment of joint and several liability on the fraud claim is required as a matter of law. Plaintiffs further cite local District of Columbia case law for the proposition that joint and several liability is required when joint tortfeasors are found liable for a single injury. Plaintiffs' Supplemental Memorandum at 5 (quoting *McKenna v. Austin,* 134 F.2d 659, 664 (D.C.Cir.1943)); Brief for Faisons at 16–17 (same quote). We note that for practical purposes the local case law's use of the term "single injury" comports with Prosser's term "single indivisible result."

Plaintiffs' motion for j.n.o.v. asked the court to find the defendants to the fraud claim jointly and severally liable for all damages awarded, i.e., both compensatory and punitive damages. The trial court denied plaintiffs' motion without explanation. *Faison v. Nationwide Mortgage Corp.,* Order (D.D.C. Sept. 16, 1985).

In addition to plaintiffs' substantive appeal on the issue of joint and several liability on the fraud claim, plaintiffs and defendant Boddie both cross-appeal from the judgment on evidentiary grounds. Plaintiffs maintain that the trial judge committed prejudicial error when he excluded the previous depositional testimony of defendant

Tillette. That testimony allegedly would have informed the jury that the loan brokerage company was judgment-proof. This prejudice, plaintiffs claim, necessitates either a modified award of joint and several liability against all defendants or a remand on the issue of allocation of damages.

Boddie does not challenge the $3,000 negligence award against him, but claims that the $12,000 fraud award should be reversed because of erroneously admitted evidence and improper jury instructions. Boddie's principal evidentiary objection concerns evidence of other "bad acts" in which he denies having personally taken part. Over the objection of Boddie's counsel, the trial court allowed plaintiffs to elicit the testimony of three other ostensibly "business purpose" borrowers from Nationwide as evidence of a fraudulent pattern. Although Boddie's firm conducted the loan settlements for each of these borrowers, Boddie was not the settlement attorney at any of them. Nor was he a partner in the law firm at the time of the settlements.

Boddie claims that the "bad acts" of any other person during these other settlements cannot be imputed to him, and that the admission of that evidence was reversible error. Boddie also argues that three other acts of the trial judge; namely, his refusal to allow him to present three witnesses who would have testified about his loan settlement procedures, his instruction to the jury suggesting that unconscionable loan terms could be taken as evidence of fraud, and his admission of testimony from plaintiffs' expert witness, necessitate the reversal of the fraud judgment against Boddie.

## II. Analysis

### A. *Joint and Several Liability*

In the District of Columbia, the general rule is that joint tortfeasors are jointly and severally liable for compensatory damages. *Hill v. McDonald,* 442 A.2d 133, 137 (D.C. App.1982). If any of the defendants in this case is found to be a party to a joint venture that caused tortious injury to plaintiffs, those joint venturers are also joint tortfeasors. *See Stevens v. Hall,* 391 A.2d 792, 794 (D.C.App.1978).

After the trial judge instructed the jury on joint ventures, he specifically directed the jury to decide whether any liability stemming from the processing of the Faisons' loan involved a joint venture:

What is a joint venture? Where two, or more persons are engaged in an activity in which they are acting in pursuit of a common purpose and in which they have a mutual interest in the joint right of control, they are engaged in what is known as a joint venture, or enterprise.... The jury should note that the joint-venture relationship is one which necessarily arises from some agreement between the parties, even [sic] expressed or reasonably implied, by which they undertake to share equally the responsibility for and the right to the management of the enterprise.... Since, whenever a joint venture exists, the conduct of one member of the venture is imputed to all of the others, it follows that your verdict in this case must be alike as to all defendants whom you find to be members of the joint venture. That is to say that if you favor one, you must find in favor of all the others. If you find one member of the joint venture to be responsible, you must find all other members of the joint venture responsible equally and jointly.

\* \* \* \* \* \*

If you find that one, or more of the parties, ... were not members of the joint venture, you can not impute to such person the acts of the other, but you must confine yourselves to consideration of his acts alone and decide whether he should be liable for such acts.

Tr. at 1080–82 (jury instructions). Notwithstanding these specific instructions the jury's special verdict form made no provision for a finding of joint and several liability. Plaintiffs' and Boddie's attorneys cooperated in drafting the special verdict form, Tr. at 1058, and plaintiffs' attorney did not object to the fraud provisions in the form as submitted to the jury. Tr. at 1060–61 ("Other than [the default judg-

ment instruction on the form], we are satisfied."), 1094 ("It looks all right to me."). This does not mean that plaintiffs waived their right to a determination of joint and several liability.

To assess the impact of the inconsistency between the jury instructions and the special verdict form, we look first to the Federal Rules of Civil Procedure:

(a) *Special Verdicts.* The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact.... The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

Fed.R.Civ.P. 49(a). According to this rule, as no party objected to the verdict form's lack of explicit questions as to whether each defendant was a party to the joint venture, the parties waived their right to a trial *by jury* as to that issue. *See Rose Confections, Inc. v. Ambrosia Chocolate Co.*, 816 F.2d 381, 389 (8th Cir.1987) ("[T]he special verdict here did not contain an interrogatory on ... a disputed issue of fact. We hold, however, that this error is of no consequence now because [defendant] waived its right to a jury trial on this issue."). It was therefore up to the trial judge either to make a finding as to the dispositive factual issues that would legally require joint and several liability or to "be deemed to have made a finding in accord with the judgment on the special verdict." Fed.R.Civ.P. 49(a); *cf. Guild v. Frontin*, 59 U.S. (18 How.) 135, 15 L.Ed. 290 (1855) ("Parties may, by consent, waive the trial of issues of fact by a jury, and submit the trial of both facts and law to the court.").

Notwithstanding his statutory authority to make express findings with respect to the joint venture and single injury issues, the trial judge merely entered judgment on the verdict (after trebling the compensatory damages for violations of the District of Columbia Consumer Protection Procedures Act, as authorized by D.C.Code § 28–3905(k)(1)(A)). Because the judge failed to make an express finding as to the existence of the alleged joint venture, under Rule 49(a) the court "shall be deemed to have made a finding in accord with the judgment on the special verdict." Fed.R. Civ.P. 49(a). As the special verdict's allocation of damages individually to the various defendants is inconsistent with a finding of joint and several liability, we must deem that the judge, consistent with the jury's verdict, found no joint venture. *Cf. Rose Confections*, 816 F.2d at 389.

### B. *Joint and Several Liability as a Matter of Law*

The jury's failure to find the existence of a joint venture by no means resolves the issue of joint and several liability. Nor does the application of Rule 49(a) address the trial judge's failure to consider the three other bases advanced by plaintiffs for a finding of such liability: vicarious liability, common duty, and single injury. Because we find that the facts in the record point so clearly to at least the last, i.e., single injury, we find reversible error in the trial judge's failure to address this claim when he acted on plaintiffs' motion for j.n.o.v. In light of the overwhelming evidence supporting plaintiffs' claim of a single injury, we conclude that a finding of joint and several liability was mandatory as a matter of law.

Under District of Columbia law, multiple defendants found liable for a single injury are deemed to be joint tortfeasors, and any compensatory damages for that single injury must be awarded jointly and severally against them. In *Leiken v. Wilson*, 445 A.2d 993 (D.C.App.1982), the D.C. Court of Appeals stated:

If two or more tortfeasors produce a single injury, the plaintiff may sue each one for the full amount of the damage

and hold the defendants severally liable; but the plaintiff can obtain only a single recovery, and each defendant will be entitled to a credit for any sum that the plaintiff has collected from the other defendant.

445 A.2d at 999 (citing *McKenna v. Austin*, 134 F.2d at 664).

Although Boddie claims that the jury found "separate and divisible" injuries to plaintiffs, Brief for Appellee Boddie at 54, such a finding is at best an inference, and by no means the only one that can be drawn in this case. We decline to read any such finding into the special verdict.

The jury's special verdict found each defendant liable on plaintiffs' claim of fraud, for which plaintiffs have consistently claimed a single injury, i.e., a single indivisible result—the loss of their home. Plaintiffs' fraud claim alleged that each of the defendants made affirmative statements and/or material misstatements or omissions that were not in accord with the facts regarding essential terms of the loan arrangement. Considering the specific elements of plaintiffs' claim, the jury finding of liability for that claim is obviously a finding of liability for the plaintiffs' principal injury. We accordingly dismiss defendant Boddie's argument that plaintiffs suffered "separate and divisible" injuries.

As the judge did not make an express finding as to the existence of a single indivisible result, under Rule 49(a) "the court ... shall be deemed to have made a finding in accord with the judgment on the special verdict." Fed.R.Civ.P. 49(a). In this instance, Rule 49(a) is of little help as neither a finding of a single indivisible result nor a finding of separate injuries would comport fully with the special verdict. The former would be legally inconsistent with the jury's allocation of unequal compensatory damages among the various defendants; the latter would not accord with the jury's finding that each of the defendants was liable for fraud. As the judge did not instruct the jury on the consequences (in terms of the assessment of damages) that would flow from finding more than one defendant responsible for contributing to a single injury, we cannot draw any conclusions from the failure of the jurors to assess equal amounts (or an aggregate amount) against all the defendants.

The gravamen of plaintiffs' suit is a single *principal* injury—the loss of their home. District of Columbia law requires that the compensatory damages be awarded jointly and severally against all defendants found liable for contributing to that single *principal* injury. As the D.C. Court of Appeals said in *Greet v. Otis Elevator Co.*: "The jury should have been told there was only one injury and that the plaintiff could have only one verdict which could be against [any or all] defendants...." 187 A.2d 896, 898 (D.C.App.1963).

■ Federal appellate courts are statutorily authorized to "modify ... any judgment ... of a court lawfully brought before it for review, and [to] remand the cause and direct the entry of such appropriate judgment ... as may be just under the circumstances." 28 U.S.C. § 2106 (1982); *see Postow v. OBA Federal Savings & Loan Ass'n*, 627 F.2d 1370, 1386 (D.C.Cir. 1980); *United States v. Whitlock*, 663 F.2d 1094, 1101 (D.C.Cir.1980). As local precedent prevents us from awarding the sum total of the compensatory damage awards against all tortfeasors, *Otis Elevator*, 187 A.2d at 898 ("It is a matter of conjecture whether the jury, if properly instructed, would have returned a verdict for the full amount against either defendant."), we are thus left with essentially two options—a new trial, or a modified judgment for less than the sum of the individual awards.

■ Recognizing that a new trial, even if restricted to the issue of compensatory damages, would be unduly burdensome on the parties, we prefer in this case to apply the rule adopted by many other jurisdictions: in actions against joint tortfeasors where the jury has erroneously apportioned damages, without stating an aggregate amount, apportionment of damages should be omitted, and the verdict directed against all defendants for the largest sum found against any defendant. *See, e.g., Goines v. Pennsylvania R.R. Co.*, 3 A.D.2d 307, 160 N.Y.S.2d 39 (1957); *Kinsey v. William*

*Spencer & Son Corp.*, 165 Misc. 143, 300 N.Y.S. 391 (1937), *aff'd mem.*, 255 A.D. 995, 8 N.Y.S.2d 529 (1938), *aff'd mem.*, 281 N.Y. 601, 22 N.E.2d 168 (1939); *Curtis v. San Pedro Transp. Co.*, 10 Cal.App.2d 547, 52 P.2d 528 (1935); *G.A. Baker & Co. v. Polygraphic Co. of America*, 265 N.Y. 447, 193 N.E. 265 (N.Y.1934); *see generally* Annotation, *Propriety and Effect of Jury's Apportionment of Damages as Between Tortfeasors Jointly and Severally Liable*, 46 A.L.R.3d 801 (1972 & Supp.1987). We accordingly direct the district court to enter a judgment of $100,000 in compensatory damages jointly and severally against all defendants liable to plaintiffs on the fraud claim.

■ We note that plaintiffs have already acknowledged full satisfaction of judgment against at least two of the defendants. Such specific acknowledgments did not release the other joint tortfeasors from liability. *Hill v. McDonald*, 442 A.2d at 138–39. Any amounts already received by plaintiffs as compensatory damages in satisfaction of the fraud claim should be deducted from the $100,000 joint and several award. *Cf. Otis Elevator Co. v. Henderson*, 514 A.2d 784, 786 (D.C.App.1986) (pre-trial settlement deducted).

## C. *Hazards of Special Verdicts*

The problem of improper jury apportionment of compensatory damages on a special verdict form is not unique to this jurisdiction. The Second Circuit recently adjudicated a securities fraud case, holding that the jury in fact intended to award the total of the apportioned *compensatory* damages against each defendant jointly and severally:

> The confusion arises from the fact that the special interrogatories submitted to the jury invited them to answer separately as to each defendant the amount of compensatory damages to be recovered by plaintiff.... The jury separately assessed punitive damages against the defendants and, in the same way, assessed the amount of compensatory damages that each defendant would pay. We reiterate, however, that this form of verdict

should be avoided where defendants, if liable, are liable jointly and severally for a single injury. *See Gagnon v. Ball*, 696 F.2d 17, 19 n. 2 (2d Cir.1982). The jury should be asked, instead, what amount of damages the plaintiff has suffered. Damages in this amount can then be awarded, jointly and severally, against each defendant found liable.

*Aldrich v. Thomson McKinnon Securities, Inc.*, 756 F.2d 243, 248 (2d Cir.1985). The Second Circuit accordingly vacated the judgment of the district court and remanded with directions that the trial court enter an order for a new trial.

The cross-citation to *Gagnon v. Ball* in *Aldrich* is on point with the case now before us. In *Gagnon v. Ball*, Judge Newman discussed the same type of problem we face with special interrogatories when both compensatory and punitive damages are awarded in a civil lawsuit with multiple defendants:

> The special interrogatories submitted to the jury explicitly invited them to answer separately as to each defendant the amount of compensatory damages to be recovered by the plaintiff. No objection to this form of verdict was made at trial, nor is any issue concerning the separate awards of compensatory damages raised on appeal. Nevertheless, since the problem may recur, we note the inadvisability of the procedure used. Where, as here, defendants, if liable at all, are liable for causing the same injury, a jury given special interrogatories should be asked what amount of damages the plaintiff has suffered. All defendants found liable for the injury are then jointly and severally liable for the single award of compensatory damages. If the evidence permits a finding that more than one type of injury was suffered (*e.g.*, false arrest and unlawful search) and that not all of the defendants may have caused each of the injuries, a special interrogatory should permit the jury to determine the compensatory damages for each injury; such damages are then properly awarded, jointly and severally, against all [defendants] liable for such damages. Punitive damages, however, are properly

assessed separately against individual defendants.

*Gagnon v. Ball,* 696 F.2d 17, 19 n. 2 (2d Cir.1982).

We share the concerns expressed by the Second Circuit. In light of the severe limitations inherent in a resort to special verdict forms, we urge extreme caution in their use where multiple defendants are involved.

### D. *Evidentiary Challenges*

We find neither plaintiffs' nor Boddie's evidentiary arguments persuasive because none of the alleged discrepancies is clearly prejudicial.

#### 1. Boddie's Objections to "Bad Acts" Evidence

a. *Admissibility of Pattern Evidence.* Evidence of other crimes, wrongs, or acts is sometimes admissible for the purposes described in Federal Rule of Evidence 404(b), which reads as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In admitting such "bad acts" evidence, "[t]he determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence ... under Rule 403." Fed.R.Evid. 404(b) advisory committee's note.

Plaintiffs proffered the "bad act" evidence in question in order to demonstrate a consistent "plan," i.e., as pattern evidence of a loan fraud scheme. The evidence objected to by Boddie involved prior loan settlements in which members of Boddie's law firm served as settlement attorneys. In at least one of the other "bad act" settlements, plaintiffs' witness testified that he believed Boddie was present and "sitting at the head of the table" during settlement. Tr. at 197. The evidence evinced from the other pattern witnesses was arguably not probative of Boddie's lia-

bility for fraud in this case and, even if marginally relevant on that issue, was almost surely more prejudicial than probative; therefore, its admission violated Rule 403. Nevertheless, because there was substantial evidence (properly before the jury) of Boddie's participation in the fraud charged, we find that the erroneous admission of the "bad acts" evidence did not have a sufficient impact at trial to render the verdict against Boddie "inconsistent with substantial justice." Fed.R.Civ.P. 61.

b. *Prejudice.* Boddie relies heavily on this court's recent decision in *United States v. Hernandez,* 780 F.2d 113 (D.C. Cir.1986), to support his argument that it was reversible error for the trial judge to admit evidence against him "of extrinsic acts in which he did not participate." Reply Brief for Cross–Appellant Boddie at 5.

*Hernandez* was a criminal case involving the admission of evidence that a bystander had shouted unintelligible words during a fight involving two other parties. The court concluded that as the meaning of the words was unknown, the mere fact that the bystander shouted could not be offered as evidence that the bystander was involved in the fight. The court observed that even if the words did constitute a form of involvement, their probative value was outweighed by their prejudicial effect. 780 F.2d at 118. The court further determined that the erroneous admission of this evidence was not "harmless error" under Fed. R.Crim.P. 52(a), as "[t]he case against [the defendant] was quite close[,] once the evidence of the fight is eliminated...." *Id.* at 119. The court then concluded that, "[b]ecause admission of evidence of a 'prior bad act' to which appellant ... was not a party unduly prejudiced his trial," the court would "vacate the verdict and remand his case for a new trial untainted by such prejudicial testimony." *Id.* at 122.

The parallel between the "bad act" evidence in the present case and in *Hernandez* is substantial, because in both cases the defendant's involvement in the prior "bad acts" is uncertain and possibly marginal. We agree with the *Hernandez* court that the admission of this type of evidence

"would naturally lead a jury to assume that [the defendant] had the motive of his associates" and therefore the "slim probative value" of the evidence is normally "overwhelmed by its prejudicial effect," and it should be excluded. *Id.* at 118.

The present case, however, differs substantially from *Hernandez* in the effect of the "bad act" evidence upon the final verdict. In the case before us, the prejudicial effect of the testimony objected to is much less clear. There is ample independent evidence in the record to implicate Boddie in the specific transaction that is at issue. That evidence includes:

Boddie's acknowledged close ties to Hayman and Tillette, e.g., his "partnership" in the loan business, directorship in Area Mortgage, and legal work on behalf of Nationwide. Tr. 70; 85; 515–16; and 734.

Boddie's insistence that the loan be characterized as a business loan. Tr. 42–43; 35–36; and 75.

Boddie's representation that long-term refinancing would be available within the one-year term. Tr. 76–78.

Boddie's admissions to David Hughes that he did not care if the borrowers had businesses at all, so long as they signed the forms. Tr. 232.

The expert opinions of Professor Rohner and Benny Kass that the loan settled by Boddie was a consumer loan, not a commercial loan. Tr. 262–64 and 334.

Waters' admission that the Faisons got "ripped off" by the other parties to the settlement. Tr. 437.

Reply Brief for Cross–Appellants (Faisons) at 14–15.

In addition to the above, Boddie admitted during cross-examination that prior to settling the Faisons' loan he was aware of allegations that Nationwide was in the practice of "allegedly making business-purpose loans that were, in fact, not business-purpose loans." Tr. at 737. Furthermore, although Boddie represented to the Faisons at the settlement that he was Nationwide's attorney, Tr. at 658, he admitted in cross-examination that although the Faison loan settlement involved D.C. property and D.C.

law, he was not a member of either the District of Columbia or Virginia Bars. Tr. at 697; *see* law firm letterhead on Plaintiffs' Exhibit No. 20.

Given this abundant evidence of Boddie's personal involvement in the loan transaction, his implied representation that he was licensed to advise on matters involving District of Columbia law, and his personal association with the principals in the real estate loan enterprise, we conclude that even if the "bad acts" evidence was improperly admitted, it was not so prejudicial to Boddie's defense as to render the verdict "inconsistent with substantial justice." Fed.R.Civ.P. 61. *Cf. Czajka v. Hickman,* 703 F.2d 317, 319 (8th Cir.1983) (plaintiff was properly impeached on several grounds so that improper cross-examination about a prior conviction was harmless under Rule 61).

2. Boddie's Other Objections

■ Boddie raises three other bases for reversible error: the trial court's refusal to allow him to present three additional witnesses regarding his loan settlement practices, the court's instruction to the jury that it could find fraud if it believed the Faisons' loan transaction was unconscionably one-sided, and the court's allowing plaintiffs to proffer testimony of an expert witness concerning other loans. Brief for Cross–Appellant and Appellee Boddie at 31–46. We have examined each of these bases and find them to be harmless error, if error at all.

The court did not disallow all testimony concerning Boddie's loan settlement practices. At least four witnesses testified to their personal knowledge of those practices. The jury instruction to which Boddie objects was contained in the last paragraph of a very clear five-page instruction detailing the essential elements of fraud. Given the instruction as a whole, the jury could have had no doubts as to what was required for a finding of fraud. As to the testimony of plaintiffs' expert witness, Professor Rohner, it merely augmented other pattern evidence proffered by plaintiffs. Because, in context, none of the alleged

errors "affect[ed] the substantial rights of the parties," Fed.R.Civ.P. 61, we conclude that even if Boddie's contentions were correct, none of the matters complained of constitutes reversible error.

### 3. The Exclusion of Tillette's Deposition

The trial court refused to allow the Faisons to introduce prior depositional testimony of Tillette, who was unavailable as a witness because he had pleaded the Fifth Amendment. During its deliberations, the jury specifically asked whether Nationwide was still in business. Tr. at 1100. The court answered: "Well, there is no evidence in the record as to whether or not Nationwide is in business. You can draw your own conclusions as to that. The important thing is that Nationwide is still alive for the purpose of being sued." Tr. at 1102. Had the deposition been admitted, it would have established that Nationwide was little more than a corporate shell devoid of assets. Brief for Cross-Appellants (Faisons) at 19–20.

Given the disproportionate size of its compensatory award against Tillette/Nationwide, the jury may well have based its determinations of damages on the erroneous belief that Nationwide had resources from which damages could be paid. *Cf. Pyne v. Jamaica Nutrition Holdings Ltd.*, 497 A.2d 118, 133 (D.C.App.1985) ("But the verdicts demonstrate that the amount of compensatory damages assessed against appellants was affected by inadmissible evidence."). The determinative issue, therefore, is whether plaintiffs have been prejudiced by the exclusion of the deposition.

a. *Admissibility of Prior Depositional Testimony.* Former testimony of a witness under oath is admissible evidence under an exception to the hearsay rule when the witness is "unavailable" by virtue of pleading the Fifth Amendment privilege:

(a) *Definition of unavailability.* "Unavailability as a witness" includes situations in which the declarant—

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; ...

\* \* \* \* \* \*

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed.R.Evid. 804. Tillette's unavailability is not disputed. Nor is it disputed that Tillette and Nationwide "had an opportunity and similar motive to develop the testimony" at the prior proceeding.

b. *Prejudice.* Even if we assume *arguendo* that Tillette's deposition was admissible, we must still determine whether the plaintiffs were prejudiced by its exclusion. When punitive damages are to be awarded, the jury's knowledge of the financial capabilities of the defendants is important to the administration of justice: "[P]unitive damages must be related to the degree of culpability and the defendants' ability to pay if they are to carry their intended sanction.... Therefore, evidence of each defendant's financial standing should be admissible." *Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 992 n. \* (D.C. App.1980) (citation omitted). The facts before us now suggest that the jury awarded a total of $75,000 in punitive damages against two defendants who had no money at all.

Punitive damages, however, are not meant to compensate plaintiffs for their losses. They are intended to punish guilty defendants and to deter would-be defendants. *See* cases cited in part E *infra*. The Faisons are not prejudiced, therefore, because punitive damages cannot be paid. If any prejudice resulted from the exclusion of the Tillette deposition, it was in whatev-

er effect the exclusion may have had in the jury's assessment of compensatory damages among the parties found liable for their respective contributions to the single injury committed against the Faisons. As damages for such an injury are properly measured by the actual injury suffered by the plaintiffs, we conclude that if the exclusion of the Tillette deposition represented an abuse of discretion, in light of the disposition of this appeal (which takes the compensatory award against Tillette/Nationwide as the measure of the damages for which all the defendants are jointly and severally liable), it was no more than harmless error. *Compare Hub v. Sun Valley Co.*, 682 F.2d 776, 777 (9th Cir.1982).

### E. *Allocation of Punitive Damages*

The Faisons are asking that the *total* verdict on the fraud charge, $110,000 in compensatory damages and $63,500 punitive damages, be directed jointly and severally against each of the defendants. Brief for Faisons at 17. In the District of Columbia, punitive damages may be awarded individually against joint tortfeasors:

> While *compensatory* damages may not be apportioned among joint tort feasors [sic] in the District of Columbia ..., there appears to be no prior decision whether *punitive* damages may be apportioned. Courts in other jurisdictions differ on this question.... We feel the better rule is that punitive damages may be apportioned among joint tort feasors because punitive damages must be related to the degree of culpability and the defendants' ability to pay if they are to carry their intended sanction.... Therefore, evidence of each defendant's financial standing should be admissible.

*Remeikis v. Boss & Phelps, Inc.*, 419 A.2d at 992 n. * (D.C.App.1980) (citations omitted) (emphasis in original).

One of the authorities cited by the court in *Remeikis* is *Cheek v. J.B.G. Properties, Inc.*, 28 Md.App. 29, 344 A.2d 180 (1975), a Maryland case which in turn relies on *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), for the general proposition that punitive damages

"are not compensation for injury; instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Cheek*, 344 A.2d at 190 (citing *Gertz*, 418 U.S. at 350, 94 S.Ct. at 3012). *Cheek* further cites an 1899 Supreme Court case for the proposition that "[w]ithout apportionment of punitive damages, the admission of evidence of wealth of an affluent defendant can be devastating to an impecunious co-defendant who may well be far less culpable." 344 A.2d at 190 (citing *Washington Gas Light Co. v. Lansden*, 172 U.S. 534, 552–53, 19 S.Ct. 296, 303, 43 L.Ed. 543 (1899)). In *Washington Gas Light*, the Supreme Court held that under the common law of the District of Columbia the evidence of one co-defendant's wealth could not be admitted for the purpose of determining the amount of punitive damages against all co-defendants:

> While a [joint tortfeasor] defendant who is least to blame is still liable for all the damages suffered by plaintiff, he is not liable to respond in punitive damages, the amount of which may be based upon particular evidence of the wealth of some other defendant.

172 U.S. at 553, 19 S.Ct. at 303.

It is thus clear that under the laws of the District of Columbia, punitive damages may be apportioned among joint tortfeasors. Accordingly, we reject plaintiffs' request that the punitive damages be directed jointly and severally against the defendants and affirm the jury's allocation of punitive damages against each of them.

### III. Conclusion

As the jury expressly found each defendant liable for the same charge of fraud, we hold that the district court's entry of judgment on the special verdict was an error of law, and we remand with directions to enter judgment of $100,000 in compensatory damages jointly and severally against all defendants. We affirm the jury's findings of liability, and we affirm the punitive damage awards against each individual defendant.

*Affirmed in part, reversed in part, and remanded with directions.*

## ON PETITION FOR REHEARING

### ORDER

PER CURIAM.

 Upon consideration of the petition for rehearing of appellant Boddie and of the response thereto, it is

ORDERED, by the court, that the petition is granted on the issue of excessive compensatory damages, denied on all other issues and the cases remanded to the District Court, all for the reasons more fully set forth in the attached memorandum.

### MEMORANDUM

PER CURIAM:

The facts of these cases are fully set forth in this court's prior opinion, issued October 30, 1987. The plaintiffs in these cases have sought damages from six defendants for the loss of their home, as a result of a fraudulent loan scheme. The trial court entered judgment on a jury verdict awarding, *inter alia*, an aggregate amount of $110,100 in compensatory damages on the fraud count of the complaint. Following a special verdict form, the jury apportioned this amount unequally among the defendants. On appeal, this court held that the jury's verdict necessarily resulted in joint and several liability among the defendants for plaintiffs' total compensatory damages from fraud. Since the special verdict form did not elicit such a figure from the jury, this court determined that the highest amount awarded against any individual defendant should be taken to represent the total of fraud damages found by the jury, for which each defendant would be jointly and severally liable. That figure was $100,000.

Appellant Boddie, whose individual liability for compensatory damages for fraud was set by the jury at $5,000, petitions this court for rehearing. Boddie asserts (1) that this court's modification of the jury verdict violates the seventh amendment, (2) that the modification is contrary to District

of Columbia law, (3) that the modification is not permitted under 28 U.S.C. § 2106 (1982), (4) that the modification is not justified by the case law of other jurisdictions, (5) that the entire verdict against him should be vacated as the product of inadmissible evidence, and (6) that a verdict of $100,000 is excessive because it is not supported by the evidence.

We find that only the last of these issues warrants consideration on rehearing. Indeed, the last issue is not really being "reheard"; because of the unusual history of this case, the question of an excessive verdict is raised for the first time by our decision on appeal. The individual defendants against whom the jury awarded $100,000 in the trial below were Nationwide Mortgage and its president, Norman Tillette. Neither of these parties entered appearances in the case, and because of their defaults there was no party before the trial court with standing to challenge the $100,000 award as exceeding the evidence. As a result of this court's decision on appeal, however, appellant Boddie now has the requisite standing to raise the excessive verdict question, and we agree that it warrants our attention.

Common sense and this Circuit's precedents indicate that challenges to the size of a verdict should usually be addressed in the first instance by the trial court. "[T]he trial judge has the chief responsibility for passing on the question as to whether a new trial is to be granted on the ground of excessive or inadequate damages ... [and] must, as a result, be given an opportunity to exercise his discretion." *Ryen v. Owens*, 446 F.2d 1333, 1334 (D.C.Cir.1971). Accordingly, in addition to the disposition of the appeals set forth in our opinion of October 30, 1987, we now also remand these cases to the trial court so that it can examine the excessive verdict question.

As we stated in our recent opinion, "a new trial, even if restricted to the issue of compensatory damages, would be unduly burdensome on the parties" in this case. *Faison v. Nationwide Mortgage Corp., supra* at 687. Therefore, if the trial judge determines on remand that the evidence does

not support an award of $100,000, we believe he should condition his order for a new trial on a remittitur in the appropriate amount. Both parties will be served if the further delay and expense of a new trial are avoided through the expedience of a remittitur.

Boddie's request for rehearing on the issue of the verdict size is granted and as to the other issues is hereby denied. The cases are remanded for the trial judge's evaluation of a motion for new trial or remittitur on the grounds of an excessive verdict. This memorandum and accompanying order, along with the opinion and judgment of October 30, 1987, shall constitute the mandate of the Court at such time as it issues.

*It is so ordered.*